Commonwealth ex rel. Attorney General *v.* American Life Ins. Co. McCouch's Appeal. Little's Appeal. Miller's Appeal.

*Life insurance—Insolvency—Breach of contract—Measure of damages.*

When a life insurance company has been adjudged insolvent and has been dissolved, it has broken its engagements with its policy holders and becomes liable to them on account of such breach, and the policy holders then have a claim for damages.

In such a case the measure of damages is the net value of the policies, without regard to the health of the holder, and calculated as of the date

of the dissolution of the corporation, according to the tables of mortality used in the business of life insurance, less the outstanding premium notes, if any.

*Equitable assignment—Bill of exchange—Appropriation of funds.*

An ordinary bill of exchange or draft drawn generally and not upon any particular fund, whether accepted or not by the drawee, does not operate as an equitable assignment.

A beneficiary in a policy of insurance on the life of her husband, who died prior to the date of a decree of dissolution of the insurance company, made proof of her loss, and a sight draft was drawn to her order on the company by its treasurer. She indorsed the draft and sent it to a bank for collection. The draft was presented for payment, and payment refused, and shortly thereafter the decree of dissolution was entered. *Held* that there was no equitable assignment of the fund, and that the beneficiary was entitled to no preference over the other creditors.

*Insolvent insurance company—Policies maturing after dissolution.*

Where life policies have matured by the death of the assured after the date of the decree of the dissolution of the company, the beneficiaries are not entitled to a dividend on the face value of their policies, but only on the net value calculated as of the date of the dissolution.

*Mutual insurance—Distribution—Insolvency.*

Where an insurance company issued both ordinary life policies and mutual policies, but never kept a separate fund for the payment of mutual policies, auditors, appointed to distribute the estate of the company after its insolvency and dissolution, cannot separate mutual policies from the other policies in the distribution.

Argued May 21 and 22, 1894. Appeals, Nos. 5, 6 and 7, May T., 1894, by Josephine McCouch, Annie Little and Mary A. Miller, from order of C. P. Dauphin Co., June T., 1890, No. 480, dismissing exceptions to report of auditors distributing estate of American Life Ins. Co. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to report of auditors to distribute.

From the report of the auditors it appeared that the company was incorporated by act of April 9, 1850, P. L. 429, and supplements of April 21, 1852, P. L. 381, and April 8, 1857, P. L. 158, under the name of "The American Life and Health Insurance Company," the title of the corporation being changed on May 10, 1854, by order of the court of common pleas of Philadelphia county, to "The American Life Insurance and Trust Company," and later, on March 21, 1868, to "The American Life Insurance Company."

Section 3 of the act of incorporation provides that " the corporation hereby created, although a stock company, may embrace the mutual system, thus combining the benefits of both a stock and mutual insurance company, shall have power to insure the respective lives and health of its members and others, and to make all and every insurance appertaining to life risks of whatever kind or nature, and to receive and execute trusts, to make endowments and to grant and purchase annuities."

By supplement of April 8, 1857, the company was also authorized " to insure all kinds of property against loss or damage by fire, or any other cause or risk ; to make all kinds of insurance against loss or damage of goods, merchandise or other property in the course of transportation by land, water or otherwise, and on any vessels or boats or other water craft, wherever they may be ; to make all kinds of insurance upon life or lives ; to lend money on bottomry or respondentia ; to cause themselves to be insured against any loss, damage or risk in the course of their business, and generally to do and perform all other matters and things connected with and proper to promote their objects."

On May 13, 1890, on suggestion of the insurance commissioner of Pennsylvania, the company was dissolved by decree of the court of common pleas of Dauphin county, and The Real Estate Title Insurance and Trust Company, of Philadelphia, appointed receiver.

On July 14, 1891, the receiver filed its first account, showing a balance in its hands for distribution of $314,834.05. The account was subsequently confirmed, and the auditors were appointed to make distribution of that fund.

Other facts appear by the opinion of the court below.

Exceptions to the report of the auditors, Edgar L. King, Esq., and William J. Meyers, Esq., were dismissed by the court, in the following opinion by SIMONTON, P. J. :

" The facts are sufficiently found in the auditors' report, and we shall not restate them except so far as may be necessary with respect to the special cases to which the exceptions relate. In People v. Security Life Insurance Co., 78 N. Y. 114, it is shown that where a life insurance company has been adjudged insolvent and has been dissolved, it has broken its engagements with its policy holders and becomes liable to them on account

of such breach, and the policy holders then have a claim for damages ; and it is said that the decisions have uniformly been to this effect. The policy holders are in the same position as any other person would be who had running contracts of value with the company which it had broken—claimants for damages ; citing several cases.

" As to the measure of the damages, there can be no question that when a claim has become due before the date of the decree of dissolution, the amount of the damage for failure to pay is the amount of the valid claim, just as in all cases of failure to pay a just debt when due.

" But where policies are running at the date of dissolution, the measure of the damage suffered in each case by the policy holder is, as is said in the same case, ' the value of the policy which has been destroyed. When such value has been ascertained, the true measure of damage has been arrived at, but the difficulty is to determine the value. In any given case the precise value cannot be ascertained. If the time of death were certain, and the rate of interest determined, there would be no difficulty ; then the present value of the amount to be paid at death, diminished by the amount of the present value of all the premiums to be paid, would give the value. But the time of death is uncertain, and hence the present value of the running policy must always be speculative and uncertain.' And after discussing the mode of determining this value, the conclusion is arrived at, that the net value of the policies, without regard to the health of the holder, and calculated as of the date of the dissolution of the corporation, according to the tables of mortality used in the business of life insurance, less the outstanding premium notes, if any, fixes the true value.'

" The rules thus stated were adopted by the auditors in this case, and no exception has been taken to their action, except as to certain special cases, and it is therefore to these only that we shall direct our attention.

" In one of these special cases, in which exceptions to the report of the auditors have been filed, the claim was due at the date of the decree of dissolution, and the facts are as follows : Mary A. Miller was the beneficiary in a policy of $5,000 on the life of her husband, who died prior to the date of the decree of dissolution, and due proof having been made of the loss, a

sight draft to her order was drawn on the company in her favor by its treasurer and sent to her in Texas, where it was indorsed by her and sent through a bank for collection, and was presented for payment, and payment refused, and shortly thereafter the decree of dissolution was entered.

" On these facts it is contended on her behalf that ' the draft of this company, drawn upon itself, was an equitable assignment of funds to meet the claim,' and that hence this is a preferred claim, and entitled to be paid in full. In Nesmith v. Drum, 8 W. & S. 9, it was held that a draft on a particular fund in the hands of a third party is an equitable assignment of the fund, although the draft be not accepted. And in Clemson v. Davidson, 5 Binn. 398, it is said by TILGHMAN, C. J. : ' Any order, writing or act which makes an appropriation of a fund amounts to an equitable assignment of that fund;' but as is added in Greenfield's Estate, 24 Pa. 232, at page 240 : ' The appropriation must be in express terms, or the intent to make it must be clear. An order drawn upon one who has in his hands funds belonging to the drawer will not of itself amount to the assignment of the fund or any part of it, unless it plainly appears that the fund claimed was one designated out of which payment was to be made. If a debtor appropriates particular moneys to pay a certain debt, and it is as far delivered as the nature of the case will admit of, equity will control the appropriation, but if the act of appropriation is uncertain, or the subject-matter doubtful, the right of property in the fund is unchanged.' And in 3 Pom. Eq. Jur. 1284, it is said : ' An ordinary bill of exchange or draft drawn generally and not upon any particular fund, whether accepted or not by the drawee, does not operate as an equitable assignment. Its operation is not changed even when funds have been placed in the drawee's hands as a means of payment.'

" These authorities sufficiently show that there was no equitable assignment of any particular funds in the case we are considering. It is not acceptance by the drawee, but appropriation of the fund by the drawer which effects the assignment. By acceptance the drawee becomes the debtor to the holder, but if the draft be drawn on a particular fund it constitutes an assignment and binds the fund in the hands of the drawee on mere notice to him, whether he accepts the draft or not.

" Even if Mary A. Miller has become an equitable assignee by the delivery of the draft to her, she would not thereby have become a preferred creditor, but would have become an equitable owner of the fund assigned, and would have been entitled to follow it into the hands of the receiver if she could designate it and prove that it had come into his possession. But manifestly she can do neither. No fund is specified in the draft, and there are absolutely no indicia by which any fund can be designated or followed. There is, therefore, no basis on which her claim to be paid in full can rest.

" Exceptions have also been filed in respect of a special class of cases in which certain policies have matured by the death of the assured since the date of the decree of dissolution and before the filing of the auditors' report, and the beneficiaries in these policies contend that they are entitled to a dividend on the face value of their policies, and that the auditors erred in awarding them only a dividend on the net value calculated as of the date of the dissolution. The argument on their behalf concedes that the rule adopted by the auditors is correct when applied to policies still running at the date when the proofs were taken ; but it is contended that this is at best a calculation of chances which is adopted from the necessity of the case, and that it should not be used where at the time it is applied the data for the ascertainment of the exact value of the policies were furnished by the death of the assured. There have been cases decided in New York and in England in which the rule contended for was adopted ; among others, People v. Security Life Insurance Co., 78 N. Y. 130, and Craig's Case, L. R. 9 Eq. 711. In the first case, EARL, J., delivering the opinion of the court, said : ' This company was dissolved and a receiver appointed December 14, 1876 ; Thomas J. Lockwood, holding a life policy upon which the premium had been paid, died March 15, 1877. . . . The referee allowed the beneficiary only the reserve value of his policy at the date of the dissolution of the company, computed in the same way as the value of running policies were computed, disregarding entirely the fact of the subsequent death of the assured. In this he erred. The claimant was entitled to be allowed as his damage the value of this policy. There is no statute regulating how such value as between the receiver and the claimant shall be determined.

The rules by which the referee determines the value of running policies will not in all cases do justice. In some cases they may give the claimant more damage than he has sustained, and in other cases less. In their general application, however, they will work out results sufficiently accurate for judicial action. In general they furnish the only practicable basis of computation, and hence are sanctioned. But these rules adopted from the necessity of the case should not be used where, upon facts existing, the precise value of the policy may be easily ascertained. Their use is not then justified by any necessity or considerations of convenience. Here the whole premium had been paid, and at the time the claim was presented the precise value of the policy at the time of the dissolution could easily be shown. It was free from uncertainty or speculation. . . . There can be no embarrassment in allowing the valuation of such policies to be computed in this way where the death occurs and the proofs of death are furnished at any time before the expiration of the time for presenting claims.'

" We think this course of reasoning overlooks an essential element in the problem, and places the question on a false basis. It is not a question between the receiver and the claimant. The receiver is no party to the litigation, and has no interest in it. He would not be heard on exceptions to the report of the auditors, or on appeal to the Supreme Court. It is a proceeding to marshal and distribute the assets of the insolvent corporation, and the parties to it are the several claimants, who are parties adverse whenever their interests clash, as they do if they belong to different classes. Hence their relative equities are involved, and the rights of one class cannot be determined without considering those of all other classes.

" But it would be clearly inequitable, as between the several classes of claimants whose rights had not been fixed prior to the date of the decree of dissolution, to fix some of them at that date and allow others the benefit of contingencies that might happen within an indefinite time thereafter. They could not change the equilibrium of their equities as against each other by anything they could do themselves, and it ought not to be changed by lapse of time or the course of events. The question is not what claim any one has or would have by the lapse of time and the event of death, but what claim had each as

against the others when the corporation disappeared from the scene and they were turned over to a fund insufficient to pay them all in full. And this suggests an answer to the argument of counsel in favor of these claims, who says:

" 'Suppose a dissolution and distribution of assets should occur in the case of a company, which upon liquidation of its estate should turn out entirely solvent. It could not be contended that the defunct company could escape from its legal obligations at the date of probate of claims by paying less than the full amount of a policy to a holder whose claim had matured by reason of the death of the assured since the decree of dissolution was entered . . . . Now whether the dissolved company be solvent or insolvent, the equities of the policy holders are the same . . . . Each policy holder entered into his individual contract with the insurance company without regard to the terms of the contract of any other policy holder. Each should be entitled to come before the auditors for the amount due on his contract at the time fixed by law to take the proof of his claim.'

" If the corporation was solvent, there would be no balancing of equities between the several classes of claimants, and the question would simply be what sum each, without any reference to the others, had a right to receive from the corporation, and justice would be done by sequestrating all its assets needed to pay all the claims in full; but we cannot agree to the proposition of counsel that ' whether the dissolved corporation be solvent or insolvent, the equities of the policy holders are the same,' if by this is meant their equities as between each other; for if the corporation be solvent they have no equities as against each other, and no one of them could meddle with the dealings between the corporation and any other; while, if the corporation be insolvent, each is directly interested in what is paid to the other, as is manifested by the fact that they are litigating their conflicting claims in this proceeding.

" We think, therefore, that when it is conceded that the rule adopted by the auditors is to be applied to the claims of those whose policies were running when the audit was held, as of the date of the decree of dissolution, the equities between the claimants require the same rule to govern in cases where

the assured have died since the dissolution, but before the audit was closed.

" It must not be overlooked that the breach of contract by the corporation, on which the claim for damages in all these cases is founded, occurred at the date of the decree of dissolution, and the damages to be recovered are the value of the claims at that date.  But at that date the value of the claims now in question was not the value on which a dividend is now claimed, but merely the net value of a running policy, calculated with reference to the expectation of life.  If the corporation at that date had paid the claims according to that value the legal damage for the breach of contract would have been paid.  On the other hand, if the net value of the policies still running had been calculated as of the date when the audit was held as damages on each, it would in each case have been different from the amount arrived at by calculating it as of the date of the dissolution.  This brings into view the inequality, and, therefore, want of equity, which would result from calculating the damages as of different dates, even if the calculations were in other respects made in the same manner; and the inequality would be still greater where not only the date was different, but where the expectation of life, according to the tables, was taken in some cases, and a fixed date, ascertained by the prior accident of death, was adopted in others.

" Counsel for the claim of Josephine McCouch, the beneficiary in a paid-up policy on the life of William McCouch, who died nearly two years after the date of the decree of dissolution, seems to have recognized the force of one of these suggestions, as he claims not that the dividend should be based on the face value of the policy when the death happened, but on the net value at the date of the decree, calculated by ascertaining the present value of an amount equal to the face of the policy payable twenty-three months hence.

" This is a slight modification of the rule claimed to be applicable to the cases above considered, but it is open to the same objection that it does not adopt the value of the policy as it was at the date of the dissolution, which the auditors have found was $9,273.44, but as it afterwards was ascertained by the death of the assured to be $13,275.

" The claim in all these cases, as is shown in the case first

above quoted, is in the nature of damages for a breach of contract, and this breach occurs at the date of the decree of dissolution. The right of action for the damages suffered accrues at that date, and the damages in each case are the net value of each policy at that time. But if the damages are calculated by using data afterwards furnished by the death of the assured in particular cases, the amount, as is shown above, is different from that suffered at the date when the breach of contract occurred, and a value is fixed, as of that date, upon the policy, different from its actual value at that date. This being so, we think it would be inequitable to allow the amount to be fixed in that way, and that equity requires the same rule to be applied to all policies which were running at the date of dissolution, without regard to the fact that some have since matured by the death of the assured ; and we do not base our conclusion on the act of 1873 (Purd. 904, sec. 6), but on the general principles of equity.

" Much was said in the arguments of counsel for and against the authority of Dean's Appeal, 98 Pa. 101, as affected by the difference in principle between life and fire insurance. There is a radical difference, as is pointed out by PARK, B., in Dalby v. India and London Life Insurance Co., 15 C. B. 365. A life policy is a contract to pay a certain sum at an indefinite time; a fire policy is a contract to indemnify in case of loss. But this does not affect the authority of Dean's Appeal on the only point pertinent to this case, which is that the status of creditors of an insolvent corporation is fixed as of the date of the decree of dissolution.

" We have not been furnished with any data from which we can determine that the auditors erred in calculating the amount to be awarded on the so-called mutual policies by the same rule as that applied to the other policies. On this subject the auditors say and find, ' Counsel for death-claims on mutual policies contend that the auditors should separate the so-called mutual policy holders from the other policy holders, determine what proportion of one fund for distribution is the result of mutual premiums, and to that proportion of the entire fund apply the rule the courts have laid down with respect to purely mutual companies. This is asking the auditors to do what the company itself never did. . . . The company never kept a

separate fund for the payment of mutual policies, but all death-claims were paid indiscriminately out of whatever funds it had in bank.  It would be impossible for the auditors to do what the company never, in the many years of its existence, attempted.'

" Assuming the facts just stated to be true, as we must, in the absence of any evidence to the contrary, we cannot say that the auditors erred in their conclusion.

" It is contended that the auditors erred in failing to allow interest on the claim of Elizabeth Reich between July 18, 1889, when the policy on which the claim is based matured, and May 13, 1890, the date of the decree of dissolution.  We can see no reason why interest should not have been calculated upon this claim between these dates, unless it be that interest was not allowed on any matured claims.  Whether this be so or not, we are unable, from the data before us, to determine. If it should appear hereafter that this claim is equitably entitled to interest, it can be allowed on the second distribution, and we overrule this exception without prejudice to the right of the claimant hereafter to recover interest, if entitled thereto."

*Errors assigned* were, dismissal of exceptions, quoting them, and confirmation of report.

*Joseph N. Dohan*, for appellant, Annie Little.—The amount allowed on each death-claim maturing subsequent to dissolution of the company is such sum as put at interest at the date of dissolution would amount to the sum insured, less any unpaid premiums and dues against the policy and interest thereon from the time they became due to the maturity of the claim : People v. Ins. Co., 78 N. Y. 130; Referee's Rep., Ins. Times Extra, Jan., 1880 ; Atty. Gen. v. Ins. Co., 82 N. Y. 172 ; Guardian Mut. Life, 82 N. Y. 336 ; Continental Life, 88 N. Y. 81 ; N. J. Mut. Life Ins. Co., 31 N. J. Eq. 15 ; Bell's Case, L. R. 9 Eq. 706 ; Holdich's Case, L. R. 14 Eq. 72 ; May on Ins. 594 ; Knickerbocker Life Ins. Co., 34 Hun, 476 ; Knickerbocker Life Ins. Co., 38 Hun, 601 ; Guy v. Globe Ins. Co., 9 Ins. L. J. 466 ; Wilcox v. Plummer's Exrs., 4 Peters, 172 ; Bank v. McCalmont, 4 Rawle, 311 ; Burrill on Assignments, 648 ; Pringle v. Woolworth, 90 N. Y. 511; Wise's Ap., 99 Pa. 193.

*H. Gordon McCouch*, for appellant, Josephine McCouch.—
In case of the death of the insured after decree of dissolution,
but before expiration of time within which proofs must be sub-
mitted, the damages are ascertainable to a certainty, being the
present value on the day of the decree of dissolution of the
amount insured at the time it is payable, ascertained as is the
present value of any certain sum of money payable at a definite
future time : People v. Ins. Co., 78 N. Y. 114 ; Atty. Gen. v.
Ins. Co., 82 N. Y. 172 ; Holdich's Case, L. R. 14 Eq. 72 ;
Vanatta v. Ins. Co., 31 N. J. Eq. 15 ; Mayer v. Atty. General,
32 N. J. Eq. 815 ; Taylor v. Ins. Co., 46 Minn. 200 ; Rawls v.
Ins. Co., 27 N. Y. 282 ; Dalby v. Assurance Co., 28 Eng. L.
& Eq. 312.

There is therefore nothing in Dean's Appeal which in any
way controls this case or affects the authority of People v. Ins.
Co., 78 N. Y. 114: May on Ins., § 594; 2 Biddle on Ins.,
§ 1370; Mayer v. Atty. Gen., 32 N. J. Eq. 815; Guy v. Ins.
Co., 9 Ins. L. J. 466.

On the day of dissolution the status of Josephine McCouch
as a creditor was fixed, and no subsequent event could change
her rights.   But facts that occurred subsequent to that time
may be shown to prove what her actual damage was as of that
date : Wilcox v. Plummer's Exrs., 4 Peters, 172.

*Henry K. Fox* and *David Wallerstein*, for appellant, Mary A.
Miller.—The delivery of a draft or check upon a third party
and its acceptance by the drawee constitute an equitable as-
signment or transfer of the funds to the payee of the draft or
check : 2 Dan. Neg. Inst., 4th ed., § 1638; Atty. Gen. v. Ins.
Co., 71 N. Y. 325; Jordan's Ap., 10 W. N. 37; Coates v.
Bank 91 N. Y. 20.

The person in whose favor the assignment is made is to be
treated as a preferred creditor and to be paid the amount of
his claim in full from assets in the hands of a receiver : Le
Blanc's Case, 4 Abb. N. C. 221 ; Le Roy v. Ins. Co., 2 Edward's
(N. Y.) 657 ; Lowene v. The American Fire Ins. Co., 6 Paige
(N. Y.) 482.

The claim of Mrs. Miller was an actual matured claim, an
outstanding debt, the refusal to meet which was a refusal to
meet an obligation of the class to which the assets were to be

applied, before any of the assets of the insurance company were to be applied to meet the net value of the outstanding policies: Act of April 4, 1873, § 5, par. 3, P. L. 22.

The subsequent possession of the assets of the insurance company by the receiver could have no effect upon Mrs. Miller's right to be paid in full if the refusal of the company to pay her after the order of the insurance commissioner was invalid and in violation of the law. The receiver stood in no better position than the insurance company, and the assets in his hands were subject to the lawful claim of appellant: Beach on Receivers, § 204.

*William C. Hannis,* for appellees.—This is not a suit against a corporation. The corporation is for all purposes dead; no suit could be maintained against it, and its assets are in the custody of the law for distribution among its creditors, sufficient only to pay a small dividend to such creditors: Bank v. Colby, 21 Wal. 609; Dean's Ap., 98 Pa. 101.

The appellant can gain no advantage over other claimants of the same class at the date of the dissolution of the company, by the mere accident of the death of the insured in the short interval elapsing between the dissolution of the corporation and the closing of the proofs, and which death in no manner grew out of, or resulted from, the breach of the contract of the defunct corporation, which breach was caused by its insolvency and dissolution.

The decree of dissolution changed instantly the character of every policy. From that moment these policies were no longer living, running policies. The policy holder was at once relieved from all obligation to pay future premiums and the claim on the policy became instantly converted into a claim for damages for the breach of the contract of insurance. These damages are the net value of the policies: May on Ins. § 594.

The following cases establish the position that the insolvency and dissolution of the company relieves the policy holder from the obligation to pay future premiums, terminates the contract of insurance, and converts it into a present claim for damages: Shaw v. Ins. Co., 69 N. Y. 286; Hayner v. Ins. Co., 69 N. Y. 435; Leslie v. Ins. Co., 63 N. Y. 27; Meer v. Ins. Co., 73 N. Y. 516; Blewett v. Baker, 58 N. Y. 611; Peyster v. Pulver,

3 Barb. 284; Young v. Hunter, 6 N. Y. 203; Jones v. Ins. Co., 7 K. L. R. 1; People v. Ins. Co., 92 N. Y. 105; Att'y Gen. v. Ins. Co., 82 N. Y. 336; Att'y Gen. v. Ins. Co., 33 Hun, 138; People v. Ins. Co., 32 Hun, 147.

It has been urged in argument that there is no authority in Pennsylvania which obliged the auditor to define and ascertain the rights of creditors, as those rights existed at the period of the dissolution of the corporation. Both Dean's Ap., 98 Pa. 101, and the statute of April 4, 1873, P. L. 22, and the supplement of May 1, 1876, sec. 49, P. L. 66, creating the insurance department, required the auditors to ascertain the rights of all parties as they existed at the date of the decree of dissolution.

There was no priority of claim: May on Ins. § 594; Relfe v. Ins. Co., 76 Mo. 594; People v. Ins. Co., 71 N. Y. 222.

There was no equitable assignment: Harrisburg Nat. Bank's Ap., 10 W. N.  .

The method of calculating net value is provided by acts of April 4, 1873, P. L. 22; May 1, 1876, P. L. 66; May 9, 1889, P. L. 150; see also McDonnell v. Ins. Co., 85 Ala. 401; Carr v. Hamilton, 129 U. S. 252.

PER CURIAM, July 11, 1894:

We find no error in the decree. All that is necessary to be said in relation to the questions involved will be found in the clear and convincing opinion of the learned president of the court below. On it the decree is affirmed and appeal dismissed with costs to be paid by the appellant.