## BOYD et al. v. WRIGHT, insurance commissioner, et al.

1. Where a life-insurance company is adjudged insolvent, the claims existing in behalf of its policyholders are in the nature of damages for a breach of the contract, which occurs at the date of the dissolution of the company.

2. In the distribution of the assets of an insolvent insurance company, the general rule is that all creditors are upon an equal basis; and this rule applies as between all classes of policyholders.

(a) There is nothing in the present case to take it out of the general rule.

(b) Holders of policies who are suing for "death claims" are not entitled to priority of payment out of the assets of the insolvent corporation, over living policyholders in the same corporation.

No. 507. JULY 9, 1918.

Interventions in equity. Before Judge Ellis. Fulton superior court. June 1, 1917.

From the record in this case it appears that William A. Wright, as insurance commissioner of the State of Georgia, and as such being in charge of the assets and affairs of The Empire Life Insurance Company, in liquidation, presented to the superior court a petition, with amendments thereto, asking for direction, etc. The allegations were substantially as follows: He had filed a statement showing the then present values of the outstanding admitted death claims against the estate of The Empire Life Insurance Company, including those claims based upon annuity policies or assumed by The Empire Life Insurance Company. Since that statement one or more death claims have been adjudicated against The Empire Life Insurance Company. Plaintiff, as insurance commissioner, has in his hands an additional sum of money sufficient to authorize, in his opinion, the disbursement of not less than $20,000 and not more than $25,000 to the outstanding claims,

as ascertained at a time hereinbefore referred to (in original peti-
tion), and which have received payment amounting to fifty per
cent., including in the amounts those claims which have been ad-
judicated against or admitted by The Empire Life Insurance
Company since the above-mentioned statement. It is to the in-
terest of the estate that it be allowed to make distribution to the
death claimants, and that petitioner be allowed to do all things
necessary and proper to be done to perfect and accomplish the
payment. Petitioner also desires to make compensation to coun-
sel of record for services rendered since the last allowance by the
court. All the persons at interest in this estate have been made
parties by representation. This includes all creditors, policyhold-
ers, persons having death claims and annuity claims, and all other
persons at interest. The prayer is for an order or decree to carry
into effect the purposes of the petition. The petitioner also an-
swered the intervention of certain creditors of The Empire Life
Insurance Company, and admitted that the intervenors occupied
the relation of creditors to the company, but denied that they
were entitled to preference in the distribution of the assets of the
company because of any of the matters or things alleged by them
to exist. It was also averred that the Empire Mutual Annuity
and Life Insurance Company was organized as an assessment life-
insurance company under the laws of this State. The charter of
the company was granted on November 10, 1900, and by its char-
ter it was authorized to organize and run an insurance company
upon an annuity, mutual, and co-operative assessment plan. Sub-
sequently, on March 2, 1907, the name of the Empire Mutual An-
nuity and Life Insurance Company was changed to The Empire
Life Insurance Company. The corporate entity of the companies
was the same. After hearing the case, the court below rendered
the following opinion:

"This cause having been set for hearing on the 14th day of
April, 1917, on the amended petition for direction filed by William
A. Wright, as Insurance Commissioner of the State of Georgia,
in charge of The Empire Life Insurance Company, in liquidation,
to make distribution, and all of the persons at interest in said
estate having been made parties, either directly or by representa-
tion, and said cause having been continued to the 28th day of
April, and the matter of priority of claimants having been specially
assigned for that date, and the hearing upon said matter of priority

of claimants having been heard on that date and having been continued from time to time since that time, all of the parties at interest having been given opportunity to be heard, and such of them as desired to be heard having been heard, it is now ordered, adjudged, and decreed as follows:

"1. There have been two insurance companies concerned in this transaction. The first corporation was known as Empire Mutual Annuity and Life Insurance Company. This was an assessment company. Its charter was granted on the 10th day of November, 1900, and it was authorized to run an insurance company upon an annuity, mutual, and co-operative assessment plan, and upon an industrial plan. Subsequently, and on the 2nd day of March, 1907, the name of the company was changed to Empire Life Insurance Company, and it qualified to do a mutual life-insurance business and was licensed to do such business and did conduct such business for a period subsequent to March 2nd, 1907.

"2. In March, 1911, the present company, known as The Empire Life Insurance Company, a stock company, was chartered under the laws of the State of Georgia. The capital stock was two hundred and fifty thousand ($250,000.00) dollars; and on the 2nd day of March, 1912, the said stock company entered into a contract of reinsurance of all the risks and liabilities of the said mutual company.

"3. The stock company sold stock of the par value of $310,-790.00, with premiums of $355,042.55, making a total of $665,-832.55. A large amount of this stock was paid for in cash, and other amounts in notes. Much of this stock has been actually paid for. Actions are pending upon many of said notes. The said stock company immediately began to do a life-insurance business, writing new policies, taking new risks, and continued so to do until the beginning of litigation in this matter.

"4. Between the date of March 5, 1912, and May 15, 1915, the said stock company received an income from the first year's premiums of $282,620.65, all of which said policies were written by the stock company. It received premiums from renewal policies of $1,526,513.67. Dividends were left to accumulate with the stock company to the extent of $2,664.89, making a total of income from premiums of $1,811,799.21.

"5. A large amount of the liability of the mutual company was paid by the stock company out of assets which had never been

owned by the mutual company, and which had not been contributed by persons who had been stockholders of the mutual company.

"6. The intervenors representing claims based upon policies which have become death claims, which policies were issued by the stock company, assert priority over all claims except death claims, and intervenors representing policies which are now death claims, which policies were issued by the mutual company, and which are either policies payable in one sum or policies based upon annuities, assert that their claims are superior to all claims, for that the said policies were issued by the mutual company, and that the assets of the mutual company were impressed with these claims in superior right to the policyholders of the said mutual company, who stood in the position which is borne by stockholders in a stock company to assets of that company as against the claims of creditors of that company.

"7. The court finds, that the whole amount of unpaid death claims of all classes, not including contested death claims, is about $133,804.82. That all of the claims were based upon policies issued by the mutual company, except claims aggregating about $14,301.54. Health claims unpaid amount to about four hundred dollars.

"8. The court finds that the holders of claims on account of deaths insured against by the mutual company should be paid from the assets of the mutual company prior to the claims of other policyholders on any account whatsoever; and the court further finds that a sum of money has been paid from the assets of the stock company in the satisfaction of death claims based upon policies issued by the mutual company in excess of the amount of the claims now outstanding, and based upon policies issued by the stock company, and for the purpose of equalizing the outlay made by the stock company on account of the liability of the mutual company, as hereinbefore detailed. It is ordered that the said death claims which are based upon policies issued by the stock company be and they are hereby given the same right, priority, and rank as is here given to the death claims based upon policies issued by the mutual company.

"9. Future distribution shall be made upon this basis until the said death claims shall have been satisfied.

"10. It is further ordered that William A. Wright, as insur-

ance commissioner as aforesaid, is authorized and empowered now to distribute from twenty thousand to twenty-five thousand dollars upon the basis herein set out; that the said insurance commissioner is authorized to use his discretion as to the amount to be distributed within the limits herein set out. He is authorized and empowered to do all things necessary to be done to carry this order into effect.

"11. It is further ordered, that nothing here contained shall affect advantageously or disadvantageously the claims of living ' policyholders who hold policies issued by the mutual company, as to their rank in the distribution of this estate as against claims of those now in life who hold policies issued by the stock company. Such claims will be paid [passed?] upon de novo when presented.

"Let this order remain of file twenty days, with right of all parties at interest to file objections; that if such objections be filed, the court will hear and pass upon the same as to justice may appertain. This May 22, 1917."

On June 1, 1917, the order set forth above was amended as follows: "It is ordered that the judgment and decree entered in this brief [?] on May 22, 1917, which said order and decree was directed to remain of file for twenty days before becoming final, be and the same is hereby amended, for the purpose of clarifying the meaning thereof, by adding the following clause to the eighth (8th) paragraph of said order:

"It is further ordered, that death claims upon policies issued by the mutual company and by the stock company be paid out of assets in the hands of said insurance commissioner, whether the same were owned by either the mutual company or the stock company, in priority to and over other claims of policyholders on any account whatsoever; and that such claims, when based upon policies issued by the mutual company, or upon policies issued by the stock company, shall have no priority one over the other, but the said policies shall be paid upon a basis of equality. Payments shall be so made until said policies shall have been paid in full, or until the assets of said estate shall have been exhausted. It is further ordered that this order remain of file, subject to objections, until the previous order entered on the 22nd day of May, 1917, shall have become effective, and that this order shall not become effective until the said order of May 22nd has become effect-

ive, and it shall be effective when the said order of May 22nd, 1917, is effective, and not before then."

*Brewster, Howell & Heyman* and *Mark Bolding,* for plaintiffs in error.

*Robert C. & Philip H. Alston* and *Green, Tilson & McKinney,* contra.

HILL, J. Under the pleadings and record in this case, the question to be determined is whether the "death claimants" are entitled to priority of payment out of the assets in the hands of the insurance commissioner, as against living, or continuing, policyholders in the stock company—The Empire Life Insurance Company. The decree rendered by the trial judge adjudicated that death claims arising under the mutual and the stock company stood upon the same basis; and no exception was taken to this ruling. It was also held that as between the death claimants and the living policyholders, under both companies, the death claimants are entitled to priority of payment. And this is the question to be considered and decided. Intervenors alleged and insisted that the company had breached its contracts by failing and refusing to perform its obligations in accordance with the terms of the policies, and prayed that they might recover damages for a breach of the contracts. The case as made does not call for a decision as to the correct measure of damages on the breach of the contract by the failure of the insurance company. But the question is on the clear-cut issue made by the record, whether the death claimants are entitled to priority of payment over the living policyholders, as to the funds in the hands of the comptroller-general, who is also ex-officio insurance commissioner of the State. Under the facts of this case, it seems to us that each class of claimants stands upon the same basis. We see no good reason why a death claimant is entitled to priority over the living policyholders, whose policies have an accrual or cash-surrender value of a certain amount. Upon what basis of law, justice, or equity is the one class entitled to priority over the other?.

It was insisted by one intervenor that she was entitled to priority in payment out of the assets of the mutual company which were acquired by the stock company under the contract of May 2, 1912, and that the assets were impressed with a trust in the hands of the stock company and should be applied to the claims against the mutual company before any of the assets were to be applied to

claims against the stock company. The court found, "that the whole amount of unpaid death claims of all classes, not including contested death claims, is about $133,804.82. That all of the claims were based upon policies issued by the mutual company, except claims aggregating about $14,301.54. Health claims unpaid amount to about $400.00; . . . that the holders of claims on account of deaths insured against by the mutual company should be paid from the assets of the mutual company prior to the claims of other policyholders on any account whatsoever; and the court further finds that a sum of money has been paid from the assets of the stock company in satisfaction of death claims based upon policies issued by the mutual company in excess of the amount of the claims now outstanding, and based upon policies issued by the stock company, and for the purpose of equalizing the outlay made by the stock company on account of the liability of the mutual company, as hereinbefore detailed." The court then "ordered, that death claims upon policies issued by the mutual company and by the stock company be paid out of assets in the hands of said insurance commissioner, whether the same were owned by either the mutual company or the stock company, in priority to and over other claims of policyholders on any account whatsoever; and that such claims, when based upon policies issued by the mutual company, or upon policies issued by the stock company, shall have no priority one over the other, but the said policies shall be paid upon a basis of equality. Payments shall be so made until said policies shall have been paid in full, or until the assets of said estate shall have been exhausted."

In the case of a mutual fire-insurance company (Taylor v. Ins. Co., 46 Minn. 198, 48 N. W. 772), it was held that "all the outstanding policies at the date of the sequestration of its assets must be deemed to stand on the same footing, and the policyholders are entitled only to the surrender value of the same." The holder of an unmatured life policy is a creditor of the insurance company issuing the policy; and is entitled to share with the other creditors in the assets of the corporation. Any question as to the value of unmatured policies, and how such values may be ascertained, is not involved in the present suit. When a life-insurance company is adjudged insolvent, the claims accruing to its policyholders are in the nature of damages for a breach of contract, which occurs at the date of dissolution of the company; and the damages which

may be recovered are the value of the claims at that date. See
*Fuller* v. *Wright*, 147 *Ga.* 70 (92 S. E. 873); Commonwealth *v.*
American Life Ins. Co., 162 Pa. 586 (29 Atl. 660, 42 Am. St. R.
844). The general rule for the distribution of the assets has been
thus stated: "In distributing the assets of an insolvent life-in-
surance company the general rule is that all creditors stand on an
equal footing; and this rule applies between policyholders of all
classes, matured and unmatured, though there are cases giving
priority to matured policies in mutual companies. Auditors ap-
pointed to distribute the assets of an insolvent life-insurance com-
pany can not separate mutual policies from ordinary policies in
the distribution, if the company has never preserved a separate
fund for the payment of mutual policies." 14 Ruling Case Law,
855 (21); 22 Cyc. 1408 (h); Commonwealth *v.* Am. Life Ins.
Co., 170 Pa. 170 (32 Atl. 405); Shloss *v.* Metropolitan Surety
Co., 149 Iowa, 382 (128 N. W. 384). And see note to Boston &
Albany Railroad Co. *v.* Mercantile Trust &c. Co., 38 L. R. A. 97,
103 (82 Md. 535, 34 Atl. 778). And we think the above states
the general rule correctly. There is nothing in the present case
to take it out of the general rule. We think, therefore, that the
court erred in giving priority to the "death claims" over the claims
of holders of life policies in the stock company.

*Judgment reversed. All the Justices concur.*