HOBBS, Com'r of Insurance of State of Kansas, v. OCCIDENTAL LIFE INS. CO. et al.

No. 1514.

Circuit Court of Appeals, Tenth Circuit.

Jan. 12, 1937.

John G. Egan and John L. Hunt, both of Topeka, Kan. (Clarence V. Beck and John H. Hunt, both of Topeka, Kan., on the brief), for appellant.

George E. Brammer, of Des Moines, Iowa (Joseph Brody, Clyde B. Charlton, and Louis A. Parker, all of Des Moines, Iowa, on the brief), for appellee Occidental Life Ins. Co.

Jerome S. Koehler, of Kansas City, Kan. (Thomas C. Lysaught, of Kansas City, Kan., on the brief), for appellee receiver.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The Federal Reserve Life Insurance Company was organized under the laws of Kansas. One of its policyholders who was also a stockholder, acting for himself and all others similarly situated, instituted this action for the appointment of a liquidating receiver. An order was entered directing that the Commissioner of Insurance of the state be notified of the pendency of the suit and that he be permitted to intervene if he so desired. A copy of such order and a copy of the amended bill were served on the commissioner, but he failed to appear. The court found on May 22, 1936, that the affairs of the company had been wrongfully and dishonestly managed; that its assets were being dissipated; and that it was hopelessly insolvent. A temporary receiver was thereupon appointed and he was directed to seek proposals from solvent insurance companies to reinsure the outstanding policies of the failed company. Five days thereafter the company filed an answer in which it consented to the appointment of a permanent receiver and to the entry of a final decree directing reinsurance, rehabilitation, or liquidation of its affairs. Two days later the temporary receiver was appointed permanent receiver. The receiver and Occidental Life Insurance Company, a corporation organized under the laws of California and authorized to engage in business in Kansas, entered into a contract on June 13th, in which it was provided that, subject to

the liens, terms and conditions of the agreement and not otherwise, Occidental reinsured and assumed the liabilities of Federal Reserve under its policies of insurance which were in force on May 22d; that coincident with the approval of the contract, title to all of the assets of Federal Reserve including those on deposit with the insurance department of any state, should vest in Occidental and that the receiver should execute appropriate instruments of conveyance or assignment; that all such assets and the profits from them, except books, records, office furniture, fixtures, and appliances, together with the net gains from the business reinsured should be administered in a separate account called Federal Reserve fund; that since the assets of Federal Reserve at their then value, were insufficient to cover the reserve liabilities of that company a lien of 50 per cent. of the net equity should be placed against each policy thus reinsured with provision that the lien should be adjusted by an appraisal of the assets as of May 22d, and should be thereafter adjusted from time to time by the application of the net profits arising out of the business of the Federal Reserve, but in no event should it exceed 50 per cent. of such net equity; that if, at the end of any calendar year prior to 1951 or on June 30, 1951, the total lien and accrued interest on all policies then in force had decreased to such an extent that it was equal to or less than the equivalent of $11 per $1,000 of premium paying insurance then in force, Occidental should contribute to the Federal Reserve fund an amount sufficient to discharge such lien; that if on June 30, 1951, such lien should exceed the named amount, Occidental should contribute to the fund the sum of $11 per $1,000 of such insurance, less such percentage thereof as that contribution bears to the net equity of the policies reinsured; that thereafter the lien should not be subject to further change except for interest; that the lien against any policy could be discharged at any time by the payment to Occidental of the entire amount and that thereupon such policy should become free and not subject to subsequent adjustment of the lien; that death claims should be paid in full, the reduction having exclusive application to the net equity in the policies; that upon the application of the insured named in any reinsured policy, Occidental should have the right to issue a new policy on its form and credit thereto any amount to which the insured would then be entitled under the terms of the agreement; that Occidental did not assume any liability of Federal Reserve except as set forth in the agreement; and that Occidental should promptly mail to the insured in each policy in force on May 22d, a printed copy of the agreement and a certificate of assumption of liability. The agreement contained many other provisions, but this resume of the pertinent ones will suffice for present purposes.

The court's approval, appended to the contract, was dated June 13th; and on the same date a decree was entered approving the agreement, directing the receiver to carry its provisions into execution and transferring all of the assets to Occidental, but with the provision that every holder of a policy who elected to reject the benefits of the agreement should within thirty days after Occidental mailed the notice of its assumption, deliver to the receiver his rejection in writing; that such an election should be considered as a claim for the cash surrender value of his policy as of May 22d, plus any amount thereafter paid on such insurance less the cost of carrying such insurance and less any amount paid by the receiver as a premium on any reinsurance treaty or contract covering such policy; that Occidental should be under no obligation or liability of any kind to any policyholder thus electing to reject benefits under the agreement; and that all policyholders who failed to reject such benefits in the manner and within the time specified should be deemed to have accepted such reinsurance contract and should be conclusively bound by its terms.

There were more than 27,000 policyholders on May 22d. Occidental sent each of them a copy of the agreement and the notice as directed. The receiver also mailed each of them a notice of the decree and called attention to the provision that all who failed to reject the benefits of the agreement should be deemed to have accepted it and become bound by its provisions. Twenty-eight rejected and filed claims as an election to take the cash surrender value of their respective policies; and their claims have been paid in full.

The book value of notes secured by mortgages and the par value of bonds delivered to the commissioner and by him delivered to the treasurer for safekeeping as of May 22d, were in the aggregate sum of $2,354,-114.33. Occidental filed a petition seeking an order requiring the commissioner to withdraw from the treasurer and deliver to it or the receiver notes and mortgages from such securities in the aggregate sum of

$439,518.05. It was alleged that such notes were delinquent; that an efficient administration of the securities required the immediate institution of foreclosure proceedings and sale of the real estate covered by the mortgages; that the commissioner had refused to surrender them unless Occidental deposited other securities for an amount at least equivalent in value as a substitution for those withdrawn; and that unless the commissioner were required to deliver them, Occidental could not administer them in a timely and efficient manner. The commissioner responded to an order to show cause with the contention that he was required by the laws of Kansas to retain such securities in trust for the benefit of the holders of Federal Reserve policies and could not withdraw and surrender them unless other securities were substituted. The court heard evidence and found that foreclosure proceedings should be immediately instituted on the notes in question; that the commissioner had no authority in law to maintain suits of that kind; and that it was to the best interest of those concerned with such assets to have them delivered to the Occidental or the receiver for foreclosure and service otherwise. An order was entered on November 27, 1936, by which the commissioner was directed to withdraw or cause such securities to be withdrawn from the treasurer and to deliver them to Occidental or the receiver for such purposes; but it was further provided that the proceeds derived from collection, compromise, foreclosure or sale, or deeds received in satisfaction thereof, be deposited with the treasurer through the commissioner. The commissioner was directed to make further withdrawals for like purposes on demand and that the proceeds derived therefrom be deposited in like manner. A reversal of that order is sought.

■ We come at the outset to the contention that in reality the order is a proceeding against the state of Kansas without its consent, in violation of the Eleventh amendment to the Constitution of the United States. By section 40—401, Revised Statutes of Kansas 1933 Supp., it is provided that the capital stock of a life insurance company organized on the stock plan shall be not less than $100,000; that its surplus shall be at least $25,000; that at least $100,000 in securities of the authorized character shall be deposited with the state treasurer to be held in trust for the benefit of the policyholders; and that they may be withdrawn only upon order of the Commissioner of Insurance. Section 40—403 authorizes loans to policyholders and the investment of funds in described securities. Section 40—404 provides that additional deposits shall be made with the treasurer in an amount equal to the net reserve of all outstanding and effective policies and annuity bonds. Section 40—404a, as amended by chapter 199 Laws of 1935, provides that land situated in Kansas, acquired as provided in section 40—228 as the result of mortgage loans thereon, and land on which a certificate of purchase issued in a foreclosure proceeding may be pledged at its appraised value; that in making deposits of that kind the company shall execute deeds of conveyance and assignments of the certificates to the then commissioner and his successors in office; and that when the company desires to withdraw such real estate from its reserves, the then commissioner shall, upon request, execute deeds as the company directs. Section 40—406 authorizes the withdrawal of deposited securities from time to time upon substitution of a like amount of the kind required in the first instance. A casual perusal of these statutes discloses that the securities were deposited with the treasurer for the exclusive benefit of the policyholders. The state has no pecuniary interest in them. It will not profit in any way by their retention or suffer in anywise by their surrender. The order cannot subject it or any of its officers to any diminution of assets or reduction of revenues. Its operative effect is confined to suitors who are parties to the action. The proceeding is therefore not one against the state which comes within the ban of the Eleventh Amendment. Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Morrill v. American Reserve Bond Co. (C.C.) 151 F. 305; Illinois Life Ins. Co. v. Prewitt, 123 Ky. 36, 93 S.W. 633; Hayne v. Metropolitan Trust Co., 67 Minn. 245, 69 N.W. 916. The commissioner relies upon Lankford v. Platte Iron Works, 235 U.S. 461, 35 S.Ct. 173, 59 L.Ed. 316, and Farish v. State Banking Board, 235 U.S. 498, 35 S.Ct. 185, 59 L.Ed. 330. Those cases are distinguishable, because in each of them it was held that the state had title to the Depositors' Guaranty Fund in suit, and that for such reason the action was one against the state. No comparable situation is presented here.

■ The commissioner makes the further contention that a plenary suit is necessary to determine his right of possession. We

384

cannot give assent. Where property is held by a third person, that is one not a party to the action and he makes a claim of right or title in himself or on behalf of some other person not a party, and such claim is adverse to that of the receiver, a plenary suit is necessary to recover possession. But the commissioner does not advance a claim of that kind. He puts forward a right of possession as trustee for persons who are bound by the proceedings taken in this action. An independent suit is not required in these circumstances. His claimed right of possession may be determined in summary manner in this case. Miles v. New South Building & Loan Ass'n (C.C.) 95 F. 919; State v. Second Judicial District Court, 48 Nev. 198, 228 P. 617; Ex parte Renfro, 115 Tex. 82, 273 S.W. 813, 40 A.L.R. 900; Ex parte Britton (Tex.Sup.) 92 S.W.(2d) 224; Thornton v. Washington Savings Bank, 76 Va. 432; High on Receivers, § 144; 4 Pomeroy's Eq.Jur. § 1582.

■ Argument is made that the securities are in the custody of the treasurer and that for such reason the court erred in directing the commissioner to deliver them. Section 40—401 supra, provides that securities deposited with the treasurer may be withdrawn only upon order of the commissioner. Section 40—404 provides that additional deposits shall be delivered to the commissioner and by him deposited with the treasurer. Section 40—405 provides that when the liability on a policy has terminated the securities deposited for it may be returned by direction of the commissioner. Section 40—248 authorizes the commissioner to return securities when a company voluntarily discontinues business in the manner there outlined. Construed together, these statutory provisions evince a clear legislative intent to provide that a company shall deliver securities to the commissioner; that he shall deposit them with the treasurer; and that they are to be withdrawn on order of the commissioner. The commissioner determines the amount of securities required, whether those tendered are of the specified kind, and whether they shall be withdrawn. The treasurer has no voice in such matters and it is made his ministerial duty without question on his part, to permit their withdrawal on direction of the commissioner. He is merely a designated repository for protection against loss, spoliation or destruction. Furthermore, it is not suggested that the treasurer is unwilling to surrender them on order of the commissioner. The commissioner defended in the court below on his right to retain them, not his inability to cause their delivery. The court was clothed with ample authority to compel him to direct their delivery. Illinois Life Ins. Co. v. Prewitt, supra.

■ The contention to which the commissioner devotes extended argument is that the reinsured policies are still in effect and will remain so until they are terminated by death, withdrawal of surrender values, or default in payment of premiums. As previously stated, the statutes in Kansas require the deposit of securities, authorize substitution and permit the withdrawal of excesses over policy liabilities. And in obedience to the mandate contained in section 40—407, these policies each bear a certificate signed by the commissioner certifying that it is secured by a pledge of bonds or notes and mortgages on real estate deposited with the treasurer in an amount equal to the full legal reserve; but it does not follow from these provisions of the statutes and certificates that the policies are now in force in the sense that the commissioner is required to retain the securities. It is well settled that upon the adjudication of insolvency and the appointment of a receiver on May 22d, the policies of Federal Reserve were terminated as enforceable obligations for their respective face amounts, and the holders became creditors each for an amount equal to the then value of his policy with the right to participate pro rata in the assets in receivership. Lovell v. St. Louis Mut. Life Ins. Co., 111 U.S. 264, 4 S.Ct. 390, 28 L.Ed. 423; Carr v. Hamilton, 129 U.S. 252, 9 S.Ct. 295, 32 L.Ed. 669; Ingersoll v. Missouri Valley Life Ins. Co. (C.C.) 37 F. 530; Robinson v. Mutual Reserve Life Ins. Co. (C. C.) 162 F. 794; People v. Commercial Alliance Life Ins. Co., 154 N.Y. 95, 47 N.E. 968; Commonwealth v. American Life Ins. Co., 162 Pa. 586, 29 A. 660, 42 Am.St.Rep. 844; Fuller v. Wright, 147 Ga. 70, 92 S.E. 873, L.R.A.1917E, 1139; Boyd v. Wright, 148 Ga. 216, 96 S.E. 388, 1 A.L.R. 593; Davis v. Amra Grotto, Inc., 169 Tenn. 564, 89 S.W.(2d) 754. The privilege of thus participating in such assets was the only right which the holders had from the adjudication of insolvency until the reinsurance agreement became effective.

■■ The effect of the reinsurance agreement was that with the assets in the hands of the receiver, holders of policies acquired new insurance protection. The new protection came from Occidental. The liability

of Federal Reserve for the respective sums specified in its policies was not continued after the adjudication of insolvency and the appointment of a receiver, either by decree of the court or the reinsurance agreement. The policies were in effect after the reinsurance contract became operative for the sole purpose of determining, in conjunction with the contract, the liability of Occidental, not continuing liability of Federal Reserve for which the securities were confessedly deposited. There was a novation in which Occidental was substituted for Federal Reserve in point of liability with certain changes which were made with the consent of the policyholders. Northwestern Nat. Life Ins. Co. v. Gray (C.C.A.) 161 F. 488; Illinois Life Ins. Co. v. Tully (C.C.A.) 174 F. 355; Cunningham v. Great Southern Life Ins. Co. (Tex.Civ.App.) 66 S.W.(2d) 765. The right of such holders to participate pro rata in the assets in receivership could not be taken from them without their consent. Relfe v. Columbia Life Ins. Co., 10 Mo.App. 150; American Bonding & Casualty Co. v. Chicago Bonding & Ins. Co., 226 Ill.App. 475; McMurray v. Commonwealth, 249 Mass. 574, 144 N.E. 718. But no effort was made to do that. Instead, the court expressly preserved to each of them the right to file a claim and thus receive his aliquot interest in such assets; and the transfer to Occidental was subject to that right.

■ Strong reliance is placed upon section 40—248, supra. It provides that when an insurance company organized under the laws of the state desires to discontinue business, it may make application to the commissioner; that the commissioner shall thereupon publish a notice at least once a week for six weeks; that after such publication has been completed, he shall deliver to the company the securities held by him upon becoming satisfied that all debts, judgments, and liabilities of every kind have been satisfied; that he may from time to time deliver to such company any portion of its securities on being satisfied that an equal proportion of its debts and liabilities, due or to become due, have been satisfied; but that the amount of securities retained shall be not less than twice the amount of outstanding liabilities. It is further provided that if the outstanding policies of such a company have been reinsured, the commissioner shall retain securities equal in amount to the reserves on such policies; and that the reinsuring company shall make quarterly deposits equal in amount to the

increase in the reserves. Manifestly, that section is confined to a company which elects voluntarily to discontinue business and has paid its debts in full or proposes to do so. It says at the very threshold that a company desiring to discontinue business may proceed in the manner provided. All subsequent references are plainly to such a company. It has no application to an insolvent company which is placed in receivership; and by no reasonable interpretation can the answer, filed after the appointment of a temporary receiver, be construed as an application to the commissioner under the statute. To construe it in that manner would be sheer distortion.

■ In the absence of a statute which provides in express terms or by fair implication that the commissioner shall retain these delinquent securities, and in view of the conceded fact that neither the commissioner, the treasurer, nor the state has power to maintain foreclosure proceedings upon them, equitable considerations support the order. It is obviously to the best interest of all parties concerned that they be delivered for foreclosure, thus preventing the intervention of limitation or loss otherwise; and the provision that the proceeds derived from collection, compromise, foreclosure, or sale be immediately deposited with the commissioner is an abundant safeguard against adverse effect.

Affirmed.