# IN THE MATTER OF THE INSOLVENCY OF DOME INSURANCE COMPANY, JULIO A. BRADY, Esq., Commissioner of Insurance of the Territory of the U.S. Virgin Islands

Civil No. 1984/111

District Court of the Virgin Islands

Div. of St. Croix

September 4, 1984

ARTHUR BRIGGS, II, ESQ., Assistant Attorney General, St. Thomas, V.I., *for receiver*

GEORGE H. LOGAN, ESQ., *of Counsel*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

The insolvency of the Dome Insurance Company (hereafter "Dome") continues to leave a trail of hurt and heartbreak across the width and breadth of the Virgin Islands. The Court is required to make a King Solomon-like decision as to who will share in the meagre remaining resources of this defunct insurer. We decide the matter without confidence that the decision will measurably alleviate the economic injury suffered by so many Virgin Islanders from the Dome fiasco. However, in our view, the position we take is only right and fair. We will reject the proposal of the Lieutenant Governor to grant preference in payment to holders of Dome automobile policies. Rather, we will place the policyholders on the same equal footing with all other general creditors. This will admittedly cause the slender Dome pie to be divided among a vast array of people, with only minimal return, if any, in proportion to the value of each individual claim.

### I. APPLICABLE LAW

Any decision in the arena of the Dome liquidation charts new ground in this territory. As far as is known, Dome is the first locally organized insurer to become insolvent and this marks the first territorial application of the Uniform Insurers Liquidation Act (22

125

V.I.C. § 1261 et seq.), since it was made applicable to the Virgin Islands by the Legislature in 1968.

At the time the order of liquidation was signed on July 12, 1984, 22 V.I.C. § 1277 contained the only pertinent reference to priority payment of claims against a liquidated insurance company. It simply provides that the Commissioner of Insurance will reserve funds necessary for administration of the liquidation and thereafter, wages of employees "shall be paid prior to the payment of any other debt or claim." Id. No other priority payment scheme is statutorily established.

On July 2, 1984, after Dome was placed in receivership but before liquidation was ordered, the governor signed legislation which amended section 1277. For the first time, eight classes of creditors were defined, with preference in payment to Class One, and so on in order through Class Eight. (Act No. 4969, July 2, 1984, section 4). But this amendment was not retroactive, and did not become effective until sixty days after approval by the governor, or August 31, 1984. (Act No. 4969, supra, section 12). Therefore, insofar as they apply to the issue at hand, these preferred classes can only be an advisory indication of the intent of the Government of the Virgin Islands in this matter. It is important, too, to note that the classes of preference were only created in tandem with the simultaneous creation of a fund to pay claims, which would be funded by a tax on gross insurance premiums. There is no fund in existence at the present time. (Act No. 4969, supra, section 7.)

■ The net effect of this is that the Court is left to its discretion with respect to establishing classes for priority payment of claims among general creditors.

Ironically if the newly amended section 1277 was in full force and effect as to this matter, it would reverse the order for preferential payment of claims as suggested by the Lieutenant Governor. Claimants for losses against the Dome policies would be preferred over policyholders seeking a return of unearned premiums. (Act No. 4969, supra, section 4.)

## II. DISCUSSION

### A. *The Lieutenant Governor's Proposal*

The Lieutenant Governor, as Commissioner of Insurance, is the official Liquidator of Dome. He proposed eight classes for preference purposes in payments. He divided the general creditors of Dome into subgroups, and after recognizing that the costs of admin-

istration and the claims of secured creditors would have top priority, he proposed that the following defined group be paid ahead of all other general creditors:

> *Class II.* Claims under nonassessable policies for unearned premiums of individual policies of motor vehicle insurance issued by Dome Insurance Company, excluding assignments and subrogations.

The nuts and bolts of this proposal is that the preferred class would be the persons, estimated at between 5,000 and 5,300, who held Dome motor vehicle policies which were cancelled, as of August 12, 1984, by order of the Court. These persons would have returned to them an amount equal to the unearned portion of the premium covering the period of time their policies would have run had they not been cancelled.

They would be preferred over all other general creditors, including (1) those persons insured by Dome whose personal assets are in danger because of claims made against them and which, but for Dome's failure, would have been paid under the policy, and (2) those persons who have claims against persons insured by Dome, or against Dome directly, who cannot collect under those policies because of Dome's failure.

The question of preference is urgently important to all of the above described persons, because, in point of fact, the limited assets of Dome can only be stretched far enough to pay a portion of the first preferred class. It is conceded by the Lieutenant Governor that all other classes will in reality receive nothing.

The rationale for his proposal is utilitarian: to provide "the greatest good for the greatest number of persons" within the limited resources available. His second argument is that the viability of the compulsory insurance law of the Virgin Islands dictates that a return of the unearned portion of the premium be made to Dome insureds so they might use those funds to purchase new compulsory insurance. There is a fear that many persons, now without insurance, would not obtain other insurance as lawfully required, whether for lack of money or other reasons, unless they received back their respective portion of the unearned premium. Thus, the Lieutenant Governor asserts, there might be thousands of uninsured motorists on the roads of the Virgin Islands, with the continuing concomitant chaos that this could bring to the territory.

He strongly urges approval of the proposal as the best of various unpalatable alternatives. We have no doubt this proposal is made in

good faith and is buttressed by the anguish he must feel in dealing day-to-day with the myriad of problems resulting from the Dome collapse.

## B. *The Rule of Equal Footing*

Long before American society knew that the automobile would play such a central role in the lives of citizens and the policies of their governments, it was the rule that in distributing the assets of an insolvent insurance company "all creditors stand on an equal footing". Boyd v. Wright, 96 S.E. 388, 1 A.L.R. 593 (Ga. 1918), (case citations omitted). Even earlier, the Supreme Court held that when a company becomes *civiliter mortuus*, "the policy holders become creditors to an amount equal to the equitable value of their respective policies, and entitled to participate *pro rata* in its assets." Carr v. Hamilton, 129 U.S. 669, 670 (1880).

■ It is that principle which this Court will apply to Dome's general creditors. Principle, and not expediency, must be the guiding force. Simply stated, we hold: no general creditor, such as a policyholder claiming an unearned premium, will gain any advantage over any other general creditor. The economic hurt and damage will be shared by all in proportion to his or her loss.

It is acknowledged that the proposal of the Lieutenant Governor would favor one group of general creditors at the expense of all others, in order to support the public policy of assuring that all motorists on our roads are insured. Such a public policy is worthy and admirable, but it should not be supported by the elementally unfair deprivation of a large group of citizens of their right to participate in the sharing of Dome's scant assets.

Our view is supported by the sparse case law available. In White v. State, 597 P.2d 172, 175 (Alaska 1979) a group of attorneys periodically retained by the defunct insurer sought to be included in the group defined as "employees", and thus entitled to a preference. The Alaska Supreme Court rejected their petition, holding that in a liquidation, there should be a principle of equality of treatment among all creditors. Likewise, at 43 Am.Jur.2d, Insurance, § 99, it is clearly stated:

> The rule generally followed in distributing the general assets of an insolvent stock insurance company is that the policyholders and general creditors of the company are entitled to share ratably in the distribution.

128

As stated earlier, the application of the principle of equal footing will result in, at best, a few pennies for those who may have lost thousands of dollars. But in a massive insurance failure such as Dome's where thousands of Virgin Islanders have suffered losses of varying degrees, each person should be able to view his or her neighbor and know that, as to each of them, the hurt was spread equally in proportion to the loss, and no special advantage was gained by anyone.

This rule of fairness must override the laudable efforts of the Lieutenant Governor. As to the future of compulsory insurance in this jurisdiction, we remain confident that the Lieutenant Governor will continue to lend his skilled and innovative mind to a fair solution of that problem, his present proposal having been rejected.

## III. CONCLUSION

The motion of the Lieutenant Governor to create eight classes of general creditors is denied, and all general creditors will share, pro rata, in any distribution of assets.

## ORDER

THIS MATTER is before the Court on motion of the Lieutenant Governor, Julio A. Brady, Esq., as Liquidator of the Dome Insurance Company. His motion seeks to have the Court establish a preference for certain general creditors of the insolvent insurance company, over other general creditors. The Court having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED:

THAT the motion is DENIED; and

THAT all general creditors whose claims are validated will share in any distribution of the assets of the Dome Insurance Company, as among themselves, on a pro rata basis.