## FARISH *v.* STATE BANKING BOARD OF THE STATE OF OKLAHOMA.

## STATE BANKING BOARD OF THE STATE OF OKLAHOMA *v.* FARISH.

### APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES · FOR THE EASTERN DISTRICT OF OKLAHOMA.

Nos. 446, 447.  Argued October 14, 15, 1914.—Decided January 5, 1915.

*Lankford* v. *Platte Iron Works, ante*, p. 461, followed to the effect that under the Eleventh Amendment the State Banking Board and Bank Commissioner of Oklahoma are not subject to suit by depositors of insolvent banks.

Although one may become subrogated to all the rights of a depositor in an insolvent bank in Oklahoma, that does not give him the right of suit against the state officers administering the Depositors' Guaranty Fund.

As the statute creating the State Banking Board of Oklahoma does not give the Board power to waive the State's exemption from suit, an

appearance on behalf of the members of the Board does not amount to such a waiver. *Gunter* v. *Atlantic Coast Line*, 200 U. S. 273, distinguished.

*Quære*, where the court has entered a decree establishing rights between the individual parties but dismissing the suit as against the state officers on the ground that it was one against the State, whether those officers by employing counsel to resist complainant's recovery are not bound by the decree to the extent of the rights adjudicated.

THE facts, which involve the claims of depositors in certain Oklahoma banks and the application of the Eleventh Amendment to suits in the Federal court to compel the members of the State Banking Board of Oklahoma to make payments from and distribute the Depositors' Guaranty Fund, and also the question of whether the State consented to be sued, are stated in the opinion.

*Mr. Amos L. Beaty* for Farish:

The Banking Board does not represent the State of Oklahoma in true governmental capacity and therefore is not within the exemption from suit contained in the Eleventh Amendment.

But even if the Banking Board did represent the State it could not successfully claim here an exemption from suit since it owes the appellant a specific statutory duty.

Moreover, by participation in the former suit and interference with the process of the court the Banking Board waived any exemption from suit which otherwise it might have claimed.

The fact that the statute fails to classify the Banking Board as a body corporate, or to provide that it may be sued, is no impediment in this proceeding; and it is also immaterial that the legislature has changed the composition of the Board and its plan of assessment.

In equity appellant was not only a depositor of the

Oklahoma Trust Company but, funds belonging to him in that amount and other amounts having been used to pay depositors, he became subrogated and is entitled to be treated as though he held assignments from the various depositors who were thus paid; hence the Banking Board should be required to pay him the amount deposited and also such portion of the other funds as may not be realized from the impounded securities or on the decree against the bank, together with legal interest.

*Mr. Joseph L. Hull* and *Mr. Walter A. Ledbetter*, with whom *Mr. Harry L. Stuart* and *Mr. Robert R. Bell* were on the brief, for the State Banking Board.

The Oklahoma Supreme Court has established the rule that the depositors' guaranty fund created under banking laws of that State by the compulsory assessment of state banks is not liable for any debt except that of the ordinary depositor; that that fund is created not for the benefit of the general creditors of the state bank, nor for any persons to whom the bank might become liable by reason of the torts of its officers, nor upon any obligation whatever except that arising from the ordinary relation which is created when one of its customers deposits his money in the bank. See *Columbia Trust Co.* v. *United States Guaranty Co.*, 33 Oklahoma, 535; *Lankford* v. *Oklahoma Engraving Co.*, 35 Oklahoma, 404; *Lovett* v. *Lankford* (Oklahoma), 145 Pac. Rep. 767.

The depositors' guaranty fund being one of the public funds of the State, created for the taxing power and administered by the public officers of the State, enjoys the same exemption from judicial control as any other public fund which is subject to legislative control. *Lovett* v. *Lankford* (Oklahoma), 145 Pac. Rep. 767, and cases cited in opinion.

In the course of the administration of the depositors' guaranty fund many conflicts of opinion and jurisdiction

would necessarily occur if the courts should assume the authority to participate in the administration of this fund. Under the statutes, control of this fund by the Banking Board is practically complete. It may be used not only to pay the depositors of failed banks but frequently to aid banks while in a failing condition.

If the courts could control the Banking Board there would be an unseemly conflict of jurisdiction between the judicial and the Executive Departments. This is true if the state courts alone should assume jurisdiction to interfere in the administration of the depositors' guaranty fund. More intense and complicated conflicts would arise, of course, if the Federal courts should assume the jurisdiction to administer on any part of the depositors' guaranty fund.

The only safe rule to observe is that the administration of this fund, which under the decision of the Supreme Court of Oklahoma has been held to be one of the public funds of the State, should be left exclusively to the officers composing the Banking Department of the State.

Mr. Justice McKenna delivered the opinion of the court.

Suit in equity brought by appellant against the State Banking Board and the Bank Commissioner of the State of Oklahoma, the Oklahoma Trust Company, the Alamo State Bank, the McNerney Company, corporations, and one P. J. McNerney. Later the Union State Bank, another corporation, was made a defendant. The object of the suit was to compel the Banking Board to pay appellant, as an equitable depositor of the Oklahoma Trust Company, a failed banking institution, the sum of $25,351.63. Another object was subrogation to and the establishment and enforcement of liens in the amount of $61,252.40 upon certain funds and impounded securities,

with a decree against the Banking Board for any final deficiency or unpaid balances.

The Banking Board demurred to the bill on the ground, stated with much circumstance, (1) that the suit was in effect against the State of Oklahoma; and (2) for want of equity. The demurrer was overruled. The Banking Board and the Union State Bank filed answers admitting some of the allegations of the bill and denying others, to which there were replications. A decree *pro confesso* was taken against the other defendants which was subsequently made final.

On final hearing the court decreed subrogation and established and foreclosed a lien on certain of the securities in controversy and rendered a money decree against the Union State Bank for $18,018.58.

The court reversed its ruling on demurrer of the Banking Board, holding that "because it is the opinion of the court that said State Banking Board represents the State and is not suable on such account, said complainant shall take nothing as against said Banking Board, and in that behalf the latter shall go hence without day."

Farish then prayed for an order allowing appeal from that part of the decree which denied him relief against the State Banking Board on the ground that it was one in effect against the State and that the question of the jurisdiction of the court be certified to this court. The appeal was allowed and the certificate made.

The Union State Bank and the State Banking Board also prayed an appeal from that part of the decree which adjudged that judgment be rendered against the Union State Bank for the sum of $18,018.58 with interest, being the amount of a certain deposit alleged to have been transferred from the Alamo State Bank to it, and that the State Banking Board and the State Bank Commissioner did not have a first and prior lien as against complainant for the reimbursement of the amount of money

taken by the Board and Commissioner from the Depositors' Guaranty Fund to pay off and discharge the deposits of the Alamo State Bank and the Oklahoma Trust Company and a first lien on the same account and for the same purpose on certain other securities.

There was an order of severance and the case is here on these appeals and the certificate of jurisdiction made by the District Court.

The pleadings are very long and set forth the grounds of suit with circumstantial detail. A repetition of them is not necessary. The appellant's case depends upon two propositions: (1) Whether he was an equitable depositor of the Oklahoma Trust Company. (2) This established, whether the Banking Board is subject to be sued by him.

His rights have their origin in an assignment to him by a corporation called the Texas Company.

The Texas Company furnished material to the contractors for certain paving work in the city of Muskogee, Oklahoma, for which bonds were issued and upon which, by agreement between the parties and the Oklahoma Trust Company, the Texas Company was given a first lien. Bonds to the amount of $154,035.92 were issued and delivered to the Oklahoma Trust Company and disposed of by it or carried as a deposit to the credit of itself as trustee and of which there remained to its credit as trustee on January 3, 1910, the sum of $25,351.63. It paid to the Texas Company only $27,906.57 of the proceeds of the sale of the bonds. The balance of the sum was used by the Oklahoma Trust Company in various ways which are detailed at length in the bill of complaint and traced to the possession of the Alamo State Bank and through that bank to the Banking Board, the Banking Board having taken possession under the banking laws of the State of the Alamo State Bank upon its becoming insolvent. The Alamo State Bank obtained the assets

of the Oklahoma Trust Company through a sale by the latter company to it on January 3, 1910. Composing these assets was the sum of $25,357.63, carried as a deposit by the Oklahoma Trust Company, and other sums, being credit balances of the Oklahoma Trust Company in other banks, cash paid to the Alamo State Bank and used by it to pay the indebtedness of the Oklahoma Trust Company or its depositors.

The assets of the Alamo State Bank were sold to the Union State Bank by the Banking Board acting under the authority of an order of the District Court of Muskogee County. The Union State Bank assumed in consideration thereof the payment of the depositors of the Alamo State Bank.

On December 18, 1909, the complainant herein brought suit against the Oklahoma Trust Company and others to establish his right to the paving bonds or their proceeds. The suit was numbered 1239. A receiver was appointed who was directed to demand and receive from the Oklahoma Trust Company the proceeds of the paving bonds and from all persons who might have them. The receiver duly qualified. On August 6, 1910, subsequent to the sale by the Oklahoma Trust Company of its assets to the Alamo State Bank, the complainant filed a motion against the latter bank for the purpose of obtaining an order for contempt and peremptorily requiring it to immediately pay and turn over to the receiver the proceeds of the bonds received by it.

The Banking Board subsequently appointed counsel to appear in that suit for the purpose of defeating the recovery by the complainant. In that suit all of the defenses herein pleaded were set up. The Union State Bank also appeared in that suit and aided in its defense. The final decree in that case adjudged, among other things, that the complainant became entitled to the proceeds of the paving bonds and the Oklahoma Trust Com-

pany was ordered forthwith to deliver their proceeds to him.

The Oklahoma Trust Company and the Alamo State Bank were banking institutions under the laws of the State and subject to the banking laws and paid in accordance with such laws assessments to the Banking Board, including certain emergency assessments for the purpose of creating and maintaining a depositors' guaranty fund as provided by law. And it is alleged that the depositors of the Oklahoma Trust Company, except complainant, were paid or caused to be paid by the Alamo State Bank and that this was accomplished by the use of the proceeds of the paving bonds obtained by the Alamo State Bank. That the latter bank received not less than $65,000 of the proceeds of the bonds as a part of the consideration of the assumption of the payment of the depositors of the Oklahoma Trust Company: "that the State, and, through it, said depositors, had a lien on all of the assets of said Oklahoma Trust Company to secure the payment of said depositors; and that, to the extent that the proceeds of said paving bonds were so used, your orator is subrogated to said lien, and, moreover, since said depositors were entitled to resort to the depositors' guaranty fund in the hands of said State Banking Board, and this was averted by said use of the proceeds of said paving bonds, a trust fund to which your orator was entitled, he is subrogated to that extent to the rights of said depositors against said guaranty fund, as it exists and shall exist, and against said State Banking Board."

The facts of the case are set out in the opinion of the court and need not be further stated, and the grounds of decision and the relief granted are expressed in the decree hereinafter set out.

The case of complainant is, indeed, sufficiently though generally stated in a letter which his counsel addressed to the Banking Board. It is as follows:

"Dallas, Texas, July 26, 1910.

"State Banking Board, Guthrie, Oklahoma.

"State Banking Board, Oklahoma City, Oklahoma.

"Gentlemen: Under contracts of January 5, and June 14, 1909, and transfer of December 9, 1909, my client, W. S. Farish, had a lien for more than $180,000 on certain paving bonds issued to P. J. McNerney and The McNerney Company, of Muskogee, and on the proceeds of such paving bonds, when sold. In the latter part of the year a considerable amount of such bonds were turned over to the Oklahoma Trust Company, which was engaged in the banking business at Muskogee, with its depositors guaranteed under your state law, and that company afterwards sold these bonds and used the proceeds in paying its depositors. The amount thus used, and to which my client was entitled, was $88,002.31.

"Of the amount stated, $63,117.85, or about that amount was thus misapplied in defiance of an injunction of the United States Circuit Court for the Eastern District of Oklahoma made in cause Eq. No. 1239, *W. S. Farish* v. *P. J. McNerney et al.*, pending at Muskogee, by which injunction the Oklahoma Trust Company was restrained from commingling or confusing the proceeds of said paving bonds with other funds, and was peremptorily required to keep the same separate and apart.

"My client contends that when the trust fund was wrongfully taken and applied to the payment of depositors, who were guaranteed under the State law, he, Farish, became subrogated to the rights of such depositors, and is entitled to resort to the depositors' guaranty fund, and to have you make such assessments as may be necessary to replenish said fund, if it is depleted or from any cause is inadequate to meet this demand.

"If you desire further particulars of the claim, I shall be glad to furnish them, but hardly consider it necessary

at this time, as, if I am correctly informed, you already have full knowledge of the matter.

"Please consider this as a formal demand for payment, and let me have your decision as soon as possible.

                    "Yours very truly,
            (Signed)   "A. L. Beatty,
                        "Attorney for W. S. Farish."

No particularization of the allegations of the answer of the Banking Board is necessary except to say in explanation of its attitude that it admitted that the Bank Commissioner took possession on the twenty-fifth of August, 1910, of the Alamo State Bank and of its property and assets and sold and transferred them to the Union State Bank in pursuance of an order of sale of the District Court of Muskogee County, State of Oklahoma. The sale, it is alleged, was in pursuance of an agreement whereby the bank assumed and agreed to pay the deposits owing by the Alamo State Bank amounting to the sum of $450,000, and the Bank Commissioner and the Banking Board agreed to guarantee the solvency of the assets of the Alamo State Bank to the extent and for a sufficient amount to pay all of the deposits assumed by the Union State Bank and to protect it against loss. On August 25, 1910, in pursuance of the agreement the Banking Board advanced to the Union State Bank the sum of $50,000 and has since from time to time advanced to the bank the additional sum of $150,000. These payments were made in the course of the liquidation of the assets of the Alamo State Bank and in discharge of the obligations assumed by it to pay the deposits of the Oklahoma Trust Company.

It is further alleged that under the law the State of Oklahoma, for the benefit of the Depositors' Guaranty Fund, has a first lien on the assets of the Oklahoma Trust Company and the Alamo State Bank for the reimbursement of the sum to the Union State Bank in the payment

of the deposits assumed by it. That the lien of the State is superior to any lien claimed by complainant under and by virtue of the assignments of the paving bonds under the contract set forth in the first paragraph of the bill, and the Banking Board has a right under the law to enforce the lien of the State against the assets transferred to the Alamo State Bank by the Oklahoma Trust Company and by the former to the Union State Bank.

The answer of the Union State Bank repeated the allegations of the Banking Board in regard to the transfer to it of the assets of the Alamo State Bank and alleged that its purchase of them was in good faith, for a valuable consideration and without notice of any claim or lien of complainant or his assignor, the Texas Company, and the bank became the owner thereof free from any such claim or lien.

Upon the issues thus formed and upon the proofs presented, the court decreed: (1)—(2) That to secure complainant in the payment of a portion, to-wit, the sums of $16,530.98 and $20,000, with interest thereon at the rate of 6% per annum on the first sum from April 18, 1910, and on the second sum from January 22, 1910, of a certain decree for money rendered by the court in equity cause No. 1239 on September 5, 1911, and costs, complainant, W. S. Farish, has a lien, which is hereby foreclosed against each and all of the defendants, upon those certain notes mentioned in paragraphs IX and X of the original bill of complaint in the cause, and on the proceeds of such of the notes as have been collected. The notes are described. (3) That complainant recover from the Union State Bank the sum of $18,018.58, with interest at 6% per annum from August 25, 1911, the net amount, when paid, to apply as a credit on the decree in equity cause No. 1239. (4) That if the last mentioned amount be not paid within ten days, execution shall issue therefor, and if the defendants, including the Banking Board and the Bank Commissioner

or his successor, fail to pay the amounts adjudged against the securities, then the securities, or such of them as remain unpaid, shall be sold to satisfy the amounts so adjudged against them. A special master was appointed to make the sale. (5) The complainant "was a depositor of the defendant, Oklahoma Trust Company, within the meaning of the laws of the State of Oklahoma governing the guaranteed payment of bank deposits, to the extent of $25,357.63, on the third day of January, 1910, but because it is the opinion of the court that the State Banking Board represents the State, and is not suable on such account, said complainant shall take nothing as against said banking board, and in that behalf the latter shall go hence without day." (6) "That the decree *pro confesso* heretofore entered against the defendants, Oklahoma Trust Company, Alamo State Bank, The McNerney Company, and P. J. McNerney, is hereby made final, and, as to said defendants, the complainant is adjudged fully subrogated to the rights of depositors of said Oklahoma Trust Company, not only to the amount of the aforesaid sum of $25,357.63, but also as to any deficiency that may remain after he shall have collected the amount in this decree awarded against said Union State Bank and such amounts as may be realized on the securities mentioned in the first and second paragraphs hereof, which is to say, it is hereby adjudged that in addition to said $25,357.63, funds amounting to $61,252.40, on which the complainant had a lien, and to which he was entitled, were, on the third day of January, 1910, wrongfully used by said Oklahoma Trust Company and said Alamo State Bank, at the instance, request and demand of the Bank Commissioner representing said State Banking Board, to accomplish the payment of depositors of said Oklahoma Trust Company, and therefore the complainant is fully subrogated to all rights of such depositors; but, because it is the opinion of the court that said State Banking Board represents

the State and is not suable on such account, said complainant shall take nothing as against said banking board, and in that behalf the latter shall go hence without day."

It is contended by appellant in No. 446 that "the Banking Board does not represent the State of Oklahoma in any true governmental capacity and therefore is not within the exemption from suit contained in the Eleventh Amendment."

It is further contended, "But even if the Banking Board did represent the State it could not successfully claim here an exemption from suit since it owes the appellant a specific statutory duty.".

These contentions are the same as those made in *Lankford, Com'r*, v. *Platte Iron Works Company, ante*, p. 461, and *American Water Softener Company* v. *Lankford, ante*, p. 496, and are disposed of by the decisions in those cases. It was there held that the Banking Board and Bank Commissioner were not subject to suit by depositors of insolvent banks. Therefore, as a depositor, subrogated or direct, of the Oklahoma Trust Company, Farish has no right of suit against the Banking Board.

It will be observed from the decree of the court two sums, to-wit, $16,530.98 and $20,000, with interest on each, were, in accordance with the judgment rendered "in equity cause No. 1239," declared a lien on certain securities, the lien foreclosed and the securities ordered to be sold.

The court also rendered a judgment against the Union State Bank for the sum of $18,018.58, above mentioned as coming under the decree in cause No. 1239, and which when paid with the interest thereon was to be applied as a credit on that decree. In other words such sum was decreed as part of a fund which the court said in its opinion "equitably belonged to the complainant," Farish. Of this part of the decree appellant makes no complaint.

The court further decreed (5) that "complainant [appellant] was a depositor of the Oklahoma Trust Company, within the meaning of the laws of the State of Oklahoma, governing the guaranteed payment of bank deposits to the extent of $25,357.63, on the 3d day of January, 1910." And (6) "that in addition to said $25,357.63, funds amounting to $61,252.40 on which complainant had a lien and to which he was entitled, were on the 3d day of January, 1910, [the day when the Alamo State Bank acquired the assets of the Oklahoma Trust Company] wrongfully used by said Oklahoma Trust Company and said Alamo State Bank, at the instance, request and demand of the Bank Commissioner representing said Banking Board to accomplish the payment of depositors of said Oklahoma Trust Company, and therefore the complainant is fully subrogated to all rights of such depositors. . . ." Relief was not granted against the Banking Board because, as the decree declared, of the immunity of the Board from suit.

Based on the decree the contention of appellant is that he was not only a depositor to the extent of the $25,357.63 but also to the extent of the sum of $61,252.40, it having been used to pay depositors, and he thereby became subrogated to the rights of depositors and "entitled to be treated as though holding assignments from the various depositors who were thus paid," and hence the Banking Board should be required to pay him the first sum and also so much of the second sum as may not be realized from the impounded securities or on the decree against the Union State Bank, and "if necessary"—we quote from the prayer of his bill—"to make assessments for the payment of any balance of his debt."

The contention of appellant is, therefore, that he has become a depositor of the Oklahoma Trust Company by subrogation, his money having been used to pay the depositors of that company; and the court so decreed, carefully distinguishing the rights of complainant against

what the court called "impounded collaterals" and the sum of $18,018.58 which the Union State Bank had received, and his right, to use the language of the court, "as a depositor, either directly or by subrogation." It may be admitted, therefore, that he has the rights of a depositor, but the right of suit against the Banking Board is not one of them. See *Lankford, Com'r*, v. *Platte Iron Works Company* and *American Water Softener Company* v. *Lankford, supra.*

It is further contended by appellant that "by participation in the former suit [cause 1239] and interference with the process of the court the Banking Board waived any exemption from suit which otherwise it might have claimed." *Gunter* v. *Atlantic Coast Line*, 200 U. S. 273, 292, is cited in support of the contention. The case is not apposite. The case was, it is true, ancillary to another, but in it the Attorney General of the State appeared, being directly authorized so to do by statute, and "defend said action for and on behalf of the State." The State, therefore, consented to be sued. The Oklahoma laws do not give the State Banking Board such power. Besides, the judgment in the former suit was that appellant was a depositor of the Oklahoma Trust Company, a right which was confirmed in the decree in the present case. In making this comment we assume but do not decide that the Board by employing counsel to resist the complainant's recovery in cause No. 1239 became bound by its decree.

And we see no reason for disturbing the decree in other particulars, that is, in No. 447. Indeed, there are no briefs filed in the latter case.

*Decree affirmed.*

Mr. Justice Pitney, with whom concurred Mr. Justice Day, Mr. Justice Van Devanter, and Mr. Justice Lamar, dissenting.

In No. 446,—the appeal of Farish, the depositor—for reasons expressed in the dissenting opinion in *Lankford* v. *Platte Iron Works Company*, this day decided, *ante*, p. 461, it seems to me that the decree here under review should be reversed.

In No. 447,—the cross-appeal—I concur in the result reached by the court.