**James R. KEENAN, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, and Richard L. Burket, Individually, and as an officer of the Metro Transit Police, and the District of Columbia, Defendants.**

**Michael J. SCHUMCHYK, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, and Richard L. Burket, Individually, and as an officer of the Metro Transit Police, and the District of Columbia, Defendants.**

**Civ. A. Nos. 85–0943, 85–0944.**

United States District Court, District of Columbia.

Aug. 28, 1986.

William E. McDaniels, Kevin T. Baine, and Manley W. Roberts, of Williams & Connolly, Washington, D.C., for plaintiffs.

Robert J. Kniaz, Asst. Gen. Counsel, and on brief, Sara E. Lister, Gen. Counsel, and Robert L. Polk, Associate Gen. Counsel, for defendant Washington Metropolitan Area Transit Authority.

George C. Valentine, Asst. Corp. Counsel, and on brief, John H. Polk, Acting Corp. Counsel, Martin L. Grossman, Deputy Corp. Counsel, and Cary D. Pollak, Chief, General Litigation, for defendant District of Columbia.

## OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The Court has before it defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion to Dismiss on the ground that under the Eleventh Amendment it is immune from suit in federal court. Plaintiffs have submitted an Opposition, and defendant WMATA has filed a Reply thereto. In addition, the Court has considered the supplemental memoranda on Eleventh Amendment immunity and subject-matter jurisdiction filed by the parties.

Plaintiffs' cause of action in these two consolidated cases arises out of an incident between the plaintiffs and a Metro Transit Police officer, defendant Richard L. Burket, at the Stadium-Armory Metro Station and the subsequent arrest and jailing of the plaintiffs on March 4, 1984.

Both complaints assert claims under 42 U.S.C. § 1983 against WMATA, Officer Burket, and the District of Columbia (Count I). Each plaintiff also brings common law claims for assault and battery (Count II); false arrest and false imprisonment (Count III); malicious prosecution (Count IV); and abuse of process (Count V) against all three defendants, and a claim of negligent hiring, training, and supervision (Count VI) against WMATA and the District of Columbia.

Plaintiff Keenan requests $500,000 in compensatory damages; $1 million in punitive damages; prejudgment interest; an injunction against further constitutional violations; and costs and attorneys' fees. Plaintiff Schumchyk requests $100,000 in compensatory damages and $250,000 in punitive damages as well as the other types of relief requested by plaintiff Keenan.

The Court finds, for the reasons delineated below, that Officer Burket's allegedly tortious conduct while arresting plaintiffs was in the course of his performing a governmental function. Under the Washington Metropolitan Area Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966) (codified as amended at D.C.Code § 1–2431 (1981 & Supp.1986)) ("WMATA Compact" or "Compact"), defendant WMATA has Eleventh Amendment immunity from suit in federal court for such actions. Moreover, the Court finds that WMATA has not waived its Eleventh Amendment immunity. Accordingly, the Court finds that these cases were improvidently removed from the Superior Court of the District of Columbia to the federal district court which does not have jurisdiction to hear this matter. The Court must grant defendant WMATA's Motion to Dismiss and pursuant to 28 U.S.C. § 1447(c) remand both cases to the Superior Court.

## BACKGROUND

### a. Factual History:

With a few exceptions, the parties provide widely divergent accounts of the events which led to this law suit. This much is agreed upon: on March 4, 1984, the plaintiffs, in the company of their friends, entered the Stadium-Armory Metro Station after a Washington Federals football game. When plaintiff Keenan could not find his farecard, he jumped over the turnstile. The parties contest what happened once Keenan landed on the other side.

Plaintiffs' version of the subsequent events is as follows. After alighting, Keenan went to the station attendants and explained that he had lost his farecard. Plaintiff Schumchyk immediately paid one of the attendants for another card. Plaintiffs claim that this transaction between the plaintiffs and the station attendants was calm and orderly until defendant Officer Burket of the Metro Transit Police intervened. According to plaintiffs, Burket, wielding his baton, rushed over to the group and began beating and choking Keenan who soon lost consciousness. When Schumchyk stepped in to explain that he had paid for Keenan's farecard, Burket hit him with his baton.

Contrary to plaintiffs' account, WMATA avers that after observing Keenan jump over the turnstile, Officer Burket approached him and requested that he or a member of his party purchase a farecard. Keenan, who Burket described as having a "strong odor of alcohol about [him]," *Defendant's Memorandum in Support of its Motion to Dismiss* at 2, then, without provocation, pushed the station attendant, became loud and abusive, and refused to pay the fare. Burket then advised Keenan that he was under arrest. Keenan responded by punching Burket, and Burket used "reasonable force", *id.*, in self defense to subdue him. During the altercation, Schumchyk attempted to grab Burket from behind and "was struck with the officer's baton." *Id.*

As a result of the incident Keenan was arrested, booked, and jailed for a fare violation and a felony of assaulting a police officer. Schumchyk was arrested, booked, and jailed for obstruction of justice. Officers from the District of Columbia Metropolitan Police Department assisted in the arrest, charging, and jailing of the plaintiffs.

The next day, the United States Attorney dropped the charges of felony assault against Keenan and obstruction of justice against Schumchyk. Keenan forfeited collateral on the fare violation.

### b. Procedural History:

Plaintiffs originally filed their law suits in federal district court, but at an early status call, the parties consented to dismissal, without prejudice, while plaintiffs considered refiling their claims in the Superior Court of the District of Columbia.

Plaintiffs did refile in Superior Court and defendant WMATA petitioned for removal of both actions to the United States District Court. WMATA's petitions were granted. This Court then consolidated the cases. As

stated above, WMATA has moved to dismiss on the ground that it is protected by the Eleventh Amendment and has immunity from suit in federal court. In addition, the District of Columbia has filed a Motion to Dismiss or in the Alternative for Summary Judgment.

## WMATA HAS ELEVENTH AMENDMENT IMMUNITY FOR TORTS COMMITTED BY ITS TRANSIT POLICE OFFICERS

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

■■■ It is axiomatic that under the Eleventh Amendment a state is immune from suits brought against it in federal courts by its own citizens or citizens of another state. *E.g. Hans v. Louisiana,* 134 U.S. 1, 11–15, 10 S.Ct. 504, 505–07, 33 L.Ed. 842 (1890); *Employees v. Missouri Public Health Dep't,* 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973), *quoted in Pennhurst State School & Hospital,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). A state agency also has immunity, *see, e.g., Florida Dep't of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), as does a state officer acting in his official capacity since "the action is in essence one for the recovery of money from the state." *Ford v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Finally, an agency, such as WMATA, which was created by an interstate compact approved by Congress, can have Eleventh Amendment immunity. *Morris v. WMATA,* 781 F.2d 218, 219–20 (D.C.Cir.1986); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38 (2d Cir.1977).

■■■ In 1966, Maryland, Virginia, and the District of Columbia, with the consent and approval of Congress, entered into the WMATA Compact to regulate and improve mass transportation in the Washington, D.C. metropolitan area. D.C.Code §§ 1–2401 & 1–2411 (1981 & Supp.1986). The signatories and Congress conferred sovereign immunity and Eleventh Amendment immunity upon WMATA in Section 80 of the Compact. D.C.Code § 1–2431(80); *e.g. Morris,* 781 F.2d at 219–20. Section 80 states explicitly that WMATA "shall not be liable for any torts occurring in the performance of a governmental function." D.C.Code § 1–2431(80). However, in the same section the signatories and Congress partially waived WMATA's immunity from suit, making it liable "for its contracts and torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function." D.C. Code § 1–2431(80).

Of relevance here is the opinion of this Circuit's Court of Appeals in *Morris v. WMATA,* 781 F.2d 218 (D.C.Cir.1986), affirming this Court's holding, *see Morris v. WMATA,* 583 F.Supp. 1522, 1526 (D.D.C. 1984), that WMATA's operation of a police force is a governmental function protected from suit in federal court by the Eleventh Amendment. *Morris,* 781 F.2d at 220. The Court of Appeals reiterated " '[i]f the operation of a police force is not a governmental function, then a governmental function may not exist.' " *Martin v. WMATA,* 667 F.2d 435, 436 (4th Cir.1981) (quoting *Bryant v. Mullins,* 347 F.Supp. 1282, 1286 (W.D.Va.1972)), *cited in Morris,* 781 F.2d at 220. While *Morris* did not involve a Transit Police officer's making an arrest, it is clear that an action taken by a Transit Police officer to collect a fare (as is the case in this instance) is a governmental rather than a proprietary function since the officer is performing the governmental function of enforcing the law. *Martin,* 667 F.2d at 436; *cf. Strange v. Chumas,* 580 F.Supp. 160, 161–62 (D.D.C.1983); *Gillot v. WMATA,* 507 F.Supp. 454, 457 (D.D.C.

1981); *Stitt v. WMATA,* No. 84–3880, slip op. at 1, 3–4 (D.D.C. July 17, 1985).

Metro Transit Police Officer Burket undoubtedly was performing a governmental function when he intervened and arrested plaintiffs during the farecard dispute. Pursuant to the express language of the Compact, WMATA has immunity from suit and is not liable for torts allegedly committed in the operation of its police force. Clearly, the Eleventh Amendment protects WMATA, as an arm of the state governments, from suit in this Court.

The only issue remaining before the Court is whether WMATA has waived its Eleventh Amendment immunity. This Court finds that it has not.

### WMATA HAS NOT WAIVED ITS ELEVENTH AMENDMENT IMMUNITY

*a. Waiver of Eleventh Amendment Immunity must be unequivocal.*

█ A state may waive its Eleventh Amendment immunity and consent to be sued in federal court, *see, e.g., Atascadero State Hosp. v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); *Pennhurst State School,* 465 U.S. at 99, 104 S.Ct. at 907; *Clark v. Barnard,* 108 U.S. 436, 437, 2 S.Ct. 878, 878, 27 L.Ed. 780 (1883), if its consent is "unequivocally expressed." *Pennhurst State School,* 465 U.S. at 99, 104 S.Ct. at 907; *see Atascadero State Hosp.,* 105 S.Ct. at 3147; *see also* Pagan, *Eleventh Amendment Analysis,* 39 Ark.L.Rev. 447, 490 (1986) (quoting *Atascadero State Hosp.,* 105 S.Ct. at 3147.) ("The eleventh amendment barrier remains intact unless the state gives 'an unequivocal waiver specifically applicable to federal court jurisdiction.' "). "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [the Court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Mur-*

*ray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)), *quoted in Morris v. WMATA,* 781 F.2d at 221. Simply put, "where there has not been consent, there is no jurisdiction." *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 528 n. 13, 102 S.Ct. 2557, 2574 n. 13, 73 L.Ed.2d 172 (1982) (Powell dissenting).

*b. The Compact cannot be construed as having waived WMATA's immunity from suit for torts allegedly committed by Transit Police Officer Burket while making an arrest within the District of Columbia.*

Plaintiffs argue that Section 76(b) of the Compact amended Section 80 and incorporated the local sovereign immunity laws of the signatories making them applicable to WMATA's Metro Transit Police. According to plaintiffs, the Court should apply the immunity law of the District of Columbia in this case, since the incident in question occurred within its jurisdiction. Under the law in the District there is no immunity for torts committed by government employees while performing ministerial functions, *Spencer v. General Hospital of the District of Columbia,* 425 F.2d 479, 481–82 (D.C.Cir.1969); *Wade v. District of Columbia,* 310 A.2d 857, 860 (D.C.App.1973) (*en banc* ). An arrest is considered a ministerial function. *Wade,* 310 A.2d at 860. Thus, plaintiffs contend, WMATA would have no immunity for the allegedly tortious conduct of Officer Burket when he arrested them. The Court does not agree.

In essence, plaintiffs have revived the dissent of Judge Ferren of the District of Columbia Court of Appeals in *Hall v. WMATA,* 468 A.2d 970 (D.C.App.1983): an argument that the majority of the *Hall* court rejected. *Id.* at 973. While this Court is not bound by the *Hall* court's decision, it finds the majority's opinion in *Hall* to be well-reasoned and persuasive. Moreover, after independently analyzing the relevant provisions of the Compact, the Court must agree with the *Hall* court's holding that Section 76(b) does not amend

Section 80 to require application of the immunity law of the District of Columbia to arrests by WMATA Transit Police officers in the District. *See id.* Therefore, the language of the Compact does not waive WMATA's immunity from suits for torts committed during the performance of governmental functions.

Section 80, which includes the immunity and waiver provisions described in detail herein, was part of the Compact when it was enacted in 1966. Its language was not modified when Section 76(b) was amended.

> Section 76(b) as amended states, that: Except as otherwise provided in this section, a member of the Metro Transit Police shall have the same powers, including the power to arrest, and shall be subject to the same limitations, including regulatory limitations, in the performance of his duties as a member of the duly constituted police force of the political subdivision in which the Metro Transit Police member is engaged in the performance of his duties. However, a member of the Metro Transit Police is authorized to carry and use only such weapons, including handguns, as are issued by the Authority, and only in the performance of his duties or while on the transit facilities owned, controlled, or operated by the Authority in direct transit to and from duty assignment. A member of the Metro Transit Police is authorized to carry such weapons only while in direct transit to and from a duty assignment and is subject to such additional limitations in the use of weapons as are imposed on the duly constituted police force for the political subdivision in which he is engaged in the performance of his duties.

D.C.Code § 1–2431(76)(b).

This Section's "same limitations" language cannot reasonably be construed as waiving WMATA's explicit immunity set forth in Section 80.

■ Interpretation of an interstate compact such as the WMATA Compact is a matter of federal law. *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 278–79, 79 S.Ct. 785, 788, 3 L.Ed.2d 804 (1959), *cited in Parden v. Terminal Ry. Co.,* 377 U.S. 184, 195–96, 84 S.Ct. 1207, 1214–15, 12 L.Ed.2d 233 (1964) (The Supreme Court held in *Petty* that interpretation of an interstate compact between Missouri and Tennessee and approved by Congress presented a federal question "on which this Court has the final say." *Petty,* 359 U.S. at 278, 79 S.Ct. at 788. The Court went on to state that "where the waiver is ... claimed to arise from a compact between several states, the Court is called to interpret not unilateral state action but the terms of a consensual agreement...." *Id.* at 279, 79 S.Ct. at 788.). In such cases, an express waiver of constitutional immunity will be read narrowly, *e.g. U.S. v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941), and an implied waiver "will not be lightly inferred." *Petty,* 359 U.S. at 276, 79 S.Ct. at 787. Thus, the Court should rely only upon the "clearest indications" if it is to find that the Compact expands the Court's jurisdiction. *See Atascadero State Hosp.,* 105 S.Ct. at 3148.

■ In making such a determination, the Court must look first at the plain meaning of the statute. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ("[T]he meaning of the statute must, in the first instance, be sought in the language in which the act was framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms."); *accord Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) ("[T]he starting point in every case involving construction of a statute is the language itself.")); *see generally* 2A N. Singer, *Sutherland Statutory Construction* § 46.01 (4th ed. 1984). In so doing, the Court must also construe each section together with every other section so as to read the statute as a whole. *See, e.g., Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962); *see generally* 2A

N. Singer, *Sutherland Statutory Construction* § 46.05 (4th ed. 1984).

Applying these principles to the WMATA Compact, the Court finds that the language of Section 76(b) does not explicitly state or implicitly suggest that the signatories or Congress waived WMATA's immunity for torts committed by its Transit Police officers. As the *Hall* court observed, the language in that section refers to the officers' powers and limitations regarding the making of arrests and carrying weapons. *Hall,* 468 A.2d at 972 (and legislative history cited therein).

Moreover, the WMATA Compact is plainly distinguishable from that in *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), and justifies a different result. In *Petty,* the Supreme Court found a proviso attached by Congress reserving federal court jurisdiction for suits brought under the Jones Act or other applicable congressional regulations constituted a waiver of the states' Eleventh Amendment immunity. *Id.* at 281–82, 79 S.Ct. at 790. However, here the WMATA Compact does not contain a similar proviso which would constitute a waiver.

Significantly, the language of Section 80 *expressly* establishes WMATA's immunity, and that language has remained unchanged. Furthermore, Section 80 specifically delineates the boundaries of WMATA's partial waiver of its immunity and nothing in that section indicates that WMATA's waiver extends to torts allegedly committed by members of its Transit Police. Accordingly, the Court concludes that plaintiffs' argument must fail in light of the statutory language which clearly and unambiguously creates WMATA's immunity.

c. *WMATA did not waive its Eleventh Amendment immunity by removing this cause of action to federal district court.*

Consent to suit in federal court may be granted by a specific state law or by the conduct of a state official or representative who is authorized to waive Eleventh Amendment immunity. *E.g. Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 467–70, 65 S.Ct. 347, 352–53, 89 L.Ed. 389 (1945); *Farish v. State Banking Bd.,* 235 U.S. 498, 512, 35 S.Ct. 185, 189, 59 L.Ed. 330 (1915); *Cobb Coin Co., Inc. v. Unidentified, Wrecked, and Abandoned Sailing Vessel,* 549 F.Supp. 540, 555 n. 16 (S.D.Fla.1982); *see also* Pagan, *Eleventh Amendment Analysis,* 39 Ark.L.Rev. 447, 490 (1986) ("Without legislative authorization, a state officer such as the attorney general cannot consent to suit against the state."). Thus, in some instances, a state's attorney, if authorized by state statute, can waive its Eleventh Amendment immunity. *See, e.g., Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 555 n. 2, 42 L.Ed.2d 532 (1975); *Gunter v. Atlantic Coast Line R.R.,* 200 U.S. 273, 284–89, 26 S.Ct. 252, 256–58, 50 L.Ed. 477 (1906). Whether the attorneys representing a state or one of its agencies have the power to waive its immunity is a matter of state law which requires examination of the relevant case precedents and statutes. *Ford Motor Co.,* 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945); *accord Sosna,* 419 U.S. at 396 n. 2, 95 S.Ct. at 555–56 n. 2; *Pennhurst State School,* 465 U.S. at 103 n. 12, 104 S.Ct. at 909 n. 12; *Gwinn Area Community Schools v. Michigan,* 741 F.2d 840, 846–47 (6th Cir.1984). Moreover, "[t]he test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one." *Atascadero State Hosp.,* 105 S.Ct. at 3147.

Here, plaintiffs contend that WMATA's petition for removal from Superior Court to this Court constituted a waiver of WMATA's Eleventh Amendment immunity. Applying the principles articulated above, the Court must look to the WMATA Compact, since it delineates the powers afforded WMATA as well as the nature of its organization and operations, *see* D.C.Code §§ 1–2411(1) & (15), to determine whether WMATA's attorneys have authorization to waive its constitutional protection. Bearing in mind that consent

**332**

must be "unequivocally expressed," *Pennhurst State School,* 465 U.S. at 99, 104 S.Ct. at 907, the Court finds no language in the Compact granting WMATA's attorneys or any other officials the authority to waive its Eleventh Amendment immunity.

Similarly, in *Gwinn Area Community Schools v. Michigan,* 741 F.2d 840 (6th Cir.1984), where state attorneys participated in filing a petition for removal, the Sixth Circuit examined Michigan law and the statute in question and upon finding no express consent to suit in federal court it held, "the actions of attorneys representing the state defendants ... in joining the removal petition cannot be treated as supplying a consent which the legislature withheld." *Id.* at 847. Clearly, that is the case here. Under the provisions of the Compact, WMATA's attorneys did not have authority to waive its immunity, and the Court cannot infer such consent especially when the Compact expressly limits WMATA's waiver of immunity.

Plaintiffs' argument that some federal courts have found that counsel may waive immunity in individual cases misses the mark. As many of the plaintiffs' own cases indicate, a state's consent to suit in federal court "occurs by means authorized by state law." *Cobb Coin,* 549 F.Supp. at 555–56 n. 16; *accord Sosna,* 419 U.S. at 396 n. 2, 95 S.Ct. at 555 n. 2 (Supreme Court examined Iowa precedents to determine whether by the acts of its attorney the state had consented to suit in federal court.); *Newfield House, Inc. v. Massachusetts Dep't of Public Welfare,* 651 F.2d 32, 36 n. 3 (1st Cir.1981) (First Circuit reviewed Massachusetts law to determine whether state attorney general had the power to waive the state's protection under the Eleventh Amendment.); *see also Patsy,* 457 U.S. at 515 n. 19, 102 S.Ct. at 2567 n. 19 (confirming the importance of state law in analyzing Eleventh Amendment immunity questions). While the method of conducting Eleventh Amendment analysis is unquestionably the same in each case, the results may be different for each state. *Compare Ford Motor Co.,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) *with Sosna,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Thus, none of the decisions cited by plaintiffs finding waivers based on attorneys' conduct are controlling here since each construes a different state's law and none involve the WMATA Compact.

■ Plaintiffs' contention that in the absence of any explicit state law limitations, the state's attorneys were empowered to waive its Eleventh Amendment protection also is without merit. This argument topples under the weight of authority establishing a high standard for finding waiver. *See Atascadero State Hosp.,* 105 S.Ct. 3147 ("In the absence of an unequivocal waiver specifically applicable to federal court jurisdiction, we decline to find that [a state] has waived its constitutional immunity."); *Pennhurst State School,* 465 U.S. at 99, 104 S.Ct. at 907; *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360–61. The Supreme Court has made it clear that waiver will not be lightly inferred, *see Petty,* 359 U.S. at 276, 79 S.Ct. at 787, and it must be a clear declaration of a state's intention to consent to suit. *See Pennhurst State School,* 465 U.S. at 99, 104 S.Ct. at 907. In light of these authorities and those cited throughout this Opinion, the power to waive a state's constitutional right cannot be based on mere absence of limitations to the contrary.

This Circuit's Court of Appeals has observed, "the practical result of a judgment against WMATA ... would be a payment from the treasuries of Maryland and Virginia." *Morris,* 781 F.2d at 225. Since the burden for payment would ultimately rest with these states, the Court also has examined the law of Maryland and Virginia, which are protected by the Eleventh Amendment.

While both have statutes that partially waive their sovereign immunity for certain torts committed by state employees, *see* Md.State Gov't Code Ann. §§ 12–101 *et seq.* (1984); Va.Code §§ 8.01–192 *et seq.* (1984), neither statute contains a provision expressly vesting the state's attorneys with the power to waive Eleventh Amendment

immunity. Nor has either statute been construed as providing such a waiver. *See* Md.State Gov't Code Ann. § 12–103(2) (stating that the statute does not waive Maryland's Eleventh Amendment immunity) *and Jacobs v. College of William & Mary*, 495 F.Supp. 183, 190 (E.D.Va.1980), *aff'd*, 661 F.2d 922 (4th Cir.), *cert. denied*, 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981) ("A waiver of the State's Eleventh Amendment immunity effective as to actions brought in federal court must result from clear legislative intent to accomplish that end. No such clear intent underlies [the Virginia statute], nor can this Court find any other indication that [Virginia] has consented to be sued in federal court."). Prior to the enactment of these statutes the courts in both states upheld the states' immunity unless the respective legislatures had consented to suit. *See Austin v. City of Baltimore*, 286 Md. 51, 405 A.2d 255, 257 (1979) (see cases cited therein); *Virginia Elec. & Power Co. v. Hampton Redevelopment and Hous. Auth.*, 217 Va. 30, 225 S.E.2d 364, 367 (1976); *Sayers v. Bullar*, 180 Va. 222, 22 S.E.2d 9, 10 (1942).

These statutes and court decisions further illustrate the reluctance of courts to find a waiver of immunity without Maryland or Virginia's express consent to be sued. In light of laws in these signatory states it would be unreasonable to assume that they intended for WMATA, as an agency of the states, to have the ability to waive its Eleventh Amendment immunity without consent of Congress and the signatories.

■ Finally, the purpose and effect of the Eleventh Amendment is to restrict the federal courts' jurisdiction to hear suits against state governments, their agencies, and their officials. *See* U.S. Const. amend. XI; *see, e.g., Pennhurst State School*, 465 U.S. at 97–100, 104 S.Ct. at 906–08; *Nevada v. Hall*, 440 U.S. 410, 420, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979); *see also* Nowak, *The Scope of Congressional Power to Create Causes of Action Against the State Governments and the History of the Eleventh and Fourteenth Amendments*,

75 Colum.L.Rev. 1413, 1414 (1975). Without the state's waiver of its immunity, this Court does not have jurisdiction to hear this case and obviously cannot grant the relief, primarily monetary damages, which plaintiffs request.

The Eleventh Amendment prevents the federal government from using its courts to interfer with the internal functions of state government. Note, *A Practical View of the Eleventh Amendment—Lower Court Interpretations and the Supreme Court's Reactions*, 61 Geo.L.J. 1473, 1480–81 (1973). Thus, it plays an integral role protecting the state's constitutional interest and right to determine *"whether* it may be sued, [and] *where* it may be sued." *Pennhurst State School*, 465 U.S. at 99, 104 S.Ct. at 907 (emphasis in original).

■ The parties in the above-entitled cause contest whether Eleventh Amendment immunity is analogous to subject-matter jurisdiction or personal jurisdiction. However, the Court finds this constitutional immunity has characteristics of both which makes it unique. It is so vital to the concept of federalism and important to the integrity of the independent state judiciary that it can be raised at any point in the proceedings, like subject-matter jurisdiction, even for the first time at the appellate level or before the Supreme Court. *E.g. Edelman*, 415 U.S. at 678, 94 S.Ct. at 1363; *Ford Motor Co.*, 323 U.S. at 466–67, 65 S.Ct. at 351–52; *see also* Note, *A Practical View of the Eleventh Amendment—Lower Court Interpretations and the Supreme Court's Reaction*, 61 Geo.L.Rev. 1473, 1481 (1973). However, Eleventh Amendment immunity, much like personal jurisdiction, may be waived by a state in some instances. *Petty*, 359 U.S. at 276, 79 S.Ct. at 787 (citing *Missouri v. Fiske*, 290 U.S. 18, 24, 54 S.Ct. 18, 20, 78 L.Ed. 145 (1933)). Regardless of which of these it most resembles, Eleventh Amendment immunity is a jurisdictional bar from suit which prohibits this Court from considering the merits of the case.

Because of this jurisdictional bar and the significance of the constitutional rights in-

volved, the Court, before deciding to hear this case, must be certain that WMATA has made a truly voluntary election to waive its constitutional rights and consent to suit in federal court. This is especially important here where such a waiver would directly contradict WMATA's express reservation in Section 80 of its immunity from suit for torts committed in the performance of a governmental function. The Court simply cannot construe the removal petition filed by WMATA's attorneys who have no express authority to waive its Eleventh Amendment immunity as a voluntary and unequivocal consent to suit in federal court.

For all the reasons articulated above, the Court finds that WMATA has not waived its Eleventh Amendment protection and accordingly has not consented to suit in this Court.

THIS CAUSE OF ACTION WAS REMOVED IMPROVIDENTLY, AND THE COURT IS WITHOUT JURISDICTION TO HEAR THIS MATTER. ACCORDINGLY, THE ENTIRE CASE SHALL BE REMANDED TO SUPERIOR COURT OF THE DISTRICT OF COLUMBIA.

■ Having decided the Eleventh Amendment is a jurisdictional bar to this cause of action, the Court must now determine whether to simply dismiss defendant WMATA or to remand both cases, pursuant to 28 U.S.C. § 1447(c), to the Superior Court of the District of Columbia where the Eleventh Amendment would not apply. *See Nevada v. Hall,* 440 U.S. at 421, 99 S.Ct. at 1188. Here the proper course is to remand to Superior Court.

Section 1447(c) requires the Court to remand a case where "it appears that the case was removed improvidently and without jurisdiction." The Supreme Court has held that a case may be remanded under this section *only* on these two grounds. *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 345, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976); *cf.* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and*

*Procedure* § 3739 (1985) (If the federal court is without jurisdiction, it must remand the case to state court.). Here, there is no question but that the Eleventh Amendment is a jurisdictional bar which would prevent this Court from considering plaintiffs' claims against WMATA. Because it is without jurisdiction to hear this matter, the Court finds that removal was improvidently granted. Accordingly, both cases in their entirety shall be remanded to the Superior Court of the District of Columbia, pursuant to 28 U.S.C. § 1447(c).

While they are not sufficient grounds for remand under 28 U.S.C. § 1447(c), there are equitable factors supporting the Court's decision which should be acknowledged. The United States District Court and the Superior Court of the District of Columbia have concurrent jurisdiction to hear suits filed against WMATA. *See* D.C. Code § 2431(81) (United States District Courts have original jurisdiction concurrent with the Courts of Maryland and Virginia.); *Qasim v. WMATA,* 455 A.2d 904, 905–07 (D.C.App.1983), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) (Superior Court has jurisdiction concurrent with the United States District Courts over actions involving WMATA.), *cited in Fields v. WMATA,* 743 F.2d 890, 891–92 (D.C.Cir. 1984). It would be inconsistent and unjust for defendant WMATA to choose between these two fora and then argue that its choice of federal court prohibits plaintiffs from asserting claims that they could have brought in Superior Court. While defendant WMATA would still be able to assert sovereign immunity in Superior Court, this would not bar plaintiffs' constitutional claims under Section 1983. *Maine v. Thiboutot,* 448 U.S. 1, 10–11, 100 S.Ct. 2502, 2507–08, 65 L.Ed.2d 555 (1980); *California v. Martinez,* 444 U.S. 277, 283 n. 7 & 284 n. 8, 100 S.Ct. 553, 558 n. 7 & n. 8, 62 L.Ed.2d 481 (1980); *Henderson v. District of Columbia,* 493 A.2d 982, 997 (D.C.App.1985); *see Strange v. Chumas,* 580 F.Supp. 160, 162 (D.D.C.1983). Remand preserves plaintiffs' ability to assert such claims despite

the delay it causes in litigation of this matter.

In light of its decision to remand, this Court declines to rule on the District of Columbia's Motion to Dismiss or in the Alternative for Summary Judgment which may be renewed in the Superior Court, if the District of Columbia chooses to do so.

## CONCLUSION

The Court finds in the above-entitled cause that the defendant WMATA has Eleventh Amendment immunity and has neither waived its constitutional right nor consented to suit in federal court. Moreover, the Court has determined that since it is without jurisdiction to hear the claims against WMATA, the appropriate and proper action is to dismiss these cases, without prejudice, and to remand them in their entirety to Superior Court pursuant to 28 U.S.C. § 1447(c). An Order in accordance with the foregoing shall issue of even date herewith.